## Tripner *et al. versus* Abrahams *et al.*

*Husband and wife.—Evidence of corrupt conduct of husband relative to claim of wife, when not evidence for opposite party in an action against her.—Bona fides in transactions between husband and wife not overthrown by mere presumption.—Proof of ownership by wife.— Disclaimer of title, how to be made.*

1. In an action of ejectment by a sheriff's vendee for real estate sold as the property of one who had previously conveyed it to a trustee for his wife, evidence, that on a former trial, the husband had given a witness money for

[Tripner *et al. v.* Abrahams *et al.*]

the corrupt purpose of affecting his testimony, was held inadmissible as against the wife, without proof of her complicity in the attempted wrong-doing : but that as affecting the husband, if of any effect, it was admissible.

2. Though property transactions between husband and wife are to be scanned with great care and caution, yet they are not as to their *bona fides* to be overthrown upon presumptions merely : the same rules of law and evidence apply to them as obtain in other cases ; and where the relation of the wife as creditor of the husband is clearly made out, her claim will be sustained.

3. Proof of ownership in the wife must be clear and satisfactory, sufficient to repel all adverse presumptions : but it need not be so clear that there can be no doubt: nor, if a doubt exists, must it operate affirmatively to induce a verdict against her.

4. A defendant joined in the suit, who disclaims title, must repeat his disclaimer so often as he is improperly charged : if joined, and not proven in possession he is entitled to a verdict and his costs.

CERTIFICATE from the Supreme Court at *Nisi Prius.*

This was an action of ejectment brought by Isaac Abrahams and Washington D. Eckman, Susanna Eckman, and Hironomous Eckman, by their next friend Jane Eckman, against George C. Tripner, Hannah Tripner, and William P. Corlies, for the recovery of a lot of ground and buildings at the south-west corner of Twelfth and Brown streets, in the city of Philadelphia.

The actual defendant was Hannah C. Tripner, wife of George Tripner. Both parties claimed title through the defendant George Tripner. The plaintiffs, by a sheriff's sale under a judgment and execution against George Tripner, the deed-poll bearing date May 15th 1858. The defendant, Hannah C. Tripner, through a conveyance, prior in date, by George Tripner and herself to William P. Corlies, dated August 21st 1857 ; and by a conveyance by said William P. Corlies to herself, of the same date; the consideration of the latter conveyance being $7550.

After the plaintiffs had given in evidence their deed for the land in controversy, bearing date May 15th 1858, from the sheriff to them, and showing that as early as 1857 defendant George Tripner, became embarrassed, and that numerous judgments were obtained against him, including that of plaintiffs, amounting to $679.15, they closed their case.

The defendant then offered in evidence deed from George Tripner and herself to William P. Corlies, dated August 21st 1857 ; and a deed by said William P. Corlies, her son by a former husband, to herself of same date, the consideration being $7550. She also proved, by several conveyancers, that the consideration was full, adequate, and sufficient for the property, and that it was paid by the wife to her husband, as loans, in cash, in different amounts and at different times, extending over a period of six or seven years.

It was also testified that none of this had ever been paid

[Tripner *et al.* v. Abrahams *et al.*]

back.   Mrs. Tripner was a lady of ample private means.   Prior to her marriage to George Tripner she was the widow of Briton Corlies, who died in the year 1840.   From his estate she derived several properties; and also from an unsettled partnership account of the said Briton Corlies the sum of $6175.47, and a note for the sum of $3500, which was paid.

The above-named properties were very valuable, and produced a rental of $1490 per year.   Besides this income, she was engaged for nearly ten years after her first husband's death in keeping a boarding-house.   The evidence was that she had in this business made large sums of money.   All this was before her second marriage.

About the year 1850 she married the defendant George Tripner.   He had been engaged extensively in butchering and dealing in cattle.   At various times, from the year 1850 to 1857, he applied to his wife for money, which was loaned to him, and which formed the consideration for the conveyance to her, part of this money having gone to pay debts due by said George Tripner to this plaintiff.

About the date of the conveyance Mrs. Tripner consulted counsel in reference to the case, who, after a complete and full investigation of the matter, advised the conveyance of the property in dispute from Tripner to his wife.   This Mr. Tripner assented to, and the conveyance in question was made.

The plaintiffs in rebuttal offered evidence tending to show fraud, and produced one witness who said the defendant George Tripner had bribed a witness by giving him money to treat himself.

This was objected to by defendant, but admitted under exception.

The plaintiffs then closed their case.   The learned judge (WOODWARD, C. J.), after explaining to the jury the position of the parties, and how they derived their respective titles, directed the attention of the jury to the consideration in the deeds of 21st August 1857, and the *bona fides* of the conveyance by Tripner to his wife.

" He said there was nothing in the law to prevent a husband settling and conveying his real estate to his wife, or to another in trust for her, if it were done *bonâ fide*, and for a valuable consideration; but that to make it *bonâ fide* it must be for an *adequate* as well as a *valuable* consideration, and that must be paid by the wife out of her own separate estate, else it would be in fraud of his creditors.   If so paid for, the creditors were not defrauded, for the consideration stood instead of the estate, and in judgment of law he was as able to satisfy them after such conveyance as before.   The vital questions of the cause, therefore, to be decided by the jury upon all the evidence were :

[Tripner *et al. v.* Abrahams *et al.*]

" 1st. Did Mrs. Tripner pay the consideration mentioned in these deeds out of her separate estate? And,

" 2d. Was it an adequate and fair consideration?

" There was evidence that she had separate property of her own. Was it productive enough to furnish her with means? Mere possession of money after she became Tripner's wife, would not prove her ownership. The law presumes money in possession of the wife to belong to the husband; and the profits of the boarding-house, after marriage, would belong to him. The jury are to be satisfied, beyond all reasonable doubt, of her ability to pay this large sum of money. The law looks upon such transactions with jealousy, because its benevolence to married women is so often perverted to fraudulent purposes. It requires her to come into court with full proof, such as will relieve reasonable doubts. If you pause or doubt upon her evidence, your verdict should be given to the plaintiff.

" As to the adequacy of the consideration, if it was paid out of her separate estate, there does not seem to be serious question. The former verdict and judgment are persuasive evidence for the defendant. They should weigh somewhat against the doubts that may arise in your minds about her ability to pay the moneys in question. They are conclusive of nothing. Moneys advanced and loaned to her husband prior to the conveyance, might fairly be accounted part of the consideration.

" If the plaintiffs recover, they will be entitled to mesne profits from the time this title vested."

The jury being unable to agree, and coming into court for instruction, the learned judge said: " The law does require more evidence here than it would under other circumstances. A jury would naturally require more evidence in a case like this. The small papers are not evidence of anything."

Under these rulings and instructions the jury found a verdict for the plaintiffs, but refused to give mesne profits. The counsel for the defendants then and there excepted to the aforesaid rulings and charge of the court, and the case was thereupon certified to the Supreme Court in banc, where the following errors were assigned :—

I. The learned judge who tried the cause erred,—

1. In permitting the plaintiffs to prove that George Tripner gave a witness money during the trial in the District Court.

2. In rejecting the receipts from plaintiff to defendant Tripner, prior to August 1857.

3. In charging the jury that the vital and important questions were whether Mrs. Tripner had the money to lend, and did lend it to her husband; and that " if they had any reasonable doubt upon either of these points, then they must find for the plaintiffs. That the law looked upon these transactions with jealousy,

[Tripner *et al.* v. Abrahams *et al.*]

because its benevolence to married women is so often perverted to fraudulent purposes."

4. In charging the jury: "We expect the highest kind of evidence; that kind of evidence which shall relieve the mind of all reasonable doubt." ·

5. In charging the jury: "If you pause—if you doubt, you will find for the plaintiff. It is your duty to scan the evidence with jealousy. If you find for the plaintiff, he is entitled to mesne profits from the date of his deed."

6. In charging the jury: "that the profits of the boarding-house, after marriage, would belong to the husband."

7. In charging as well against the defendant Corlies as against the other defendants—said Corlies having disclaimed all title; the sheriff having returned him out of possession, and there not being a tittle of evidence against him.

8. In answer to a question instructing the jury, "that the law *does* require more evidence here than it would under other circumstances." "A jury would naturally require more evidence in a case like this."

9. In charging the jury, "that the small papers are not evidence of anything."

10. The court erred in entering judgment against defendant Corlies.

*F. Carroll Brewster* and *George M. Wharton*, for plaintiffs in error, argued: I. That the testimony that a witness had been been paid money by defendant George Tripner should not have been admitted so as to affect Mrs. Tripner, as there was no evidence that she knew anything of the transaction, or was in any way connected with it, and it was long after the conveyance in question. The independent acts of the husband, either for or against the wife, should not be admitted in evidence.

The general rule on the subject of permitting testimony to be given of matter not alleged, is, that nothing shall be given in evidence which does not directly tend to the proof or disproof of the matter in issue. Even in the criminal law evidence of a distinct substantive offence cannot be admitted in support of another offence; *a fortiori* evidence of an intention to commit another offence cannot be admitted. So proof of a distinct offence, committed by the defendant at a different time, or of some other felony or transaction, cannot be admitted: Whart. Crim. Law, § 647; State *v.* Wisdom, 8 Porter 511; State *v.* Whittier, 8 Shep. 341; Kinchelow *v.* State, 5 Humph. 9; Commonwealth *v.* Miller, 3 Cush. 243.

II. That the defendant, Hannah C. Tripner, had fully complied with the sternest rules of the law as laid down in the nume-

rous decisions of this court, since the Married Woman's Act of 1849.

That the charge of the learned judge was too severe in its demands for this case, in charging the jury that "the law looks upon these transactions with jealousy." "We expect the highest kind of evidence—that kind of evidence which shall relieve the mind of all reasonable doubt. If you pause—if you doubt, you will find for the plaintiffs. It is your duty to scan the evidence with jealousy. If you find for the plaintiffs they are entitled to mesne profits from the date of their deed."

That when a wife proves that she owns the property in dispute, the law sanctions her title, holds it firmly by its decree, and does not "look with jealousy" upon the transaction. It never looks with jealousy upon justice, or that which its own rule commands to be right.

That the jury may justly "pause," and yet all be honest and fair.

A married woman may, during coverture, hold separate property, either with or without the intervention of trustees, derived either from her husband or from other sources, either before or after maturity, and in a great variety of ways, by gift, contract, or sufferance: Clancey on Married Women 20; 1 Fonblanque's Eq. 94; 2 Roper on Husband and Wife 152; 2 Atkyns 558; 2 Vernon 535; 1 Vesey, Jr. 48; 3 Peere Williams 337; 6 S. & R. 466; 10 Id. 208. A husband and wife may contract for a *bonâ fide* and valuable consideration for a transfer of property from him to her: Livingston *v.* Livingston, 2 Johns. Chan. Rep. 539; Brooks *v.* Dent, 1 Maryland Chan. Dec. 525; Duffy *v.* Insurance Company, 8 W. & S. 434.

In support of the proposition "that a wife, with her separate estate, may purchase from her husband, and the purchased interest will be protected even against creditors, if the transaction between husband and wife is *bonâ fide*," Lady Arundel *v.* Phipps *et al.*, 10 Vesey, Jr. 149, is in point.

*A. A. Outerbridge*, *W. H. Rawle*, and *W. L. Hirst*, for defendants in error, argued: That in cases of this nature, where the question of fraud depends on a variety of circumstances, the law allows great latitude in the admission of testimony having even a remote bearing upon the points in issue: citing Reinhard *v.* Keenbartz, 6 Watts 93; Kauffman *v.* Swan, 5 Barr 230; Reeme *v.* Parthemere, 8 Id. 462; Brown *v.* Clark, 2 Harris 469.

That the evidence objected was therefore properly admitted under the rule laid down in the preceding class of cases. That there is a presumption of collusion between George Tripner and his wife. The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of

[Tripner *et al. v.* Abrahams *et al.*]

all, and the acts and declarations of one may be given in evidence to affect others: Rogers *v.* Hall, 4 Watts 359.

No agreement of the husband and wife about the property of either, whether it be made in writing or by parol, can avail against creditors, without proof which will render the fact indubitable that it was hers independently of all agreements between themselves. This doctrine has been recognised and affirmed in the following cases: Hoar *v.* Axe, 10 Harris 384; Bradford's Appeal, 5 Casey 515; Topley *v.* Topley, 7 Id. 320; Horter *v.* Hallowell, 11 Id. 379; Auble *v.* Mason, 11 Id. 262; Walker *v.* Reamy, 12 Id. 416; Winter *v.* Walter, 1 Wright 161; Black *v.* Nease, 1 Id. 438; Gillespie *v.* Miller, 1 Id. 247; Rhoads *v.* Gordon, 2 Id. 277; Robinson *v.* Wallace, 3 Id. 129–132; Parvin *v.* Copewell, 19 Leg. Int. 188; Aurand *v.* Shaeffer, 7 Wright 363.

The opinion of the court was delivered, March 10th 1864, by

THOMPSON, J.—The trial below involved simply a question of property, and although in all such cases much is usually said about frauds and fraudulent transactions, yet until proof gives such characteristics to the matters involved, they proceed as civil issues, attended only by the legal presumptions belonging to such.

The plaintiff below claimed the property in question as belonging, at the time of the sheriff's sale, to George Tripner, the husband of Hannah C. Tripner, the real defendant, and that it passed to them by the sheriff's deed. The defendant, Mrs. Tripner, claimed it through a conveyance by her husband in trust for her, and a deed by the trustee directly back to her. The consideration for the title thus acquired, she alleged and attempted to prove, was paid by her by loans and advances of money to her husband, at various times, out of her own separate estate, to an amount sufficiently adequate, if so paid, to be a full consideration.

The consideration, and the source from which it emanated, necessarily involved the question of the *bona fides* of the transaction, and an inquiry whether the conveyance was or was not collusive and fraudulent as to creditors. This of course allowed a broad latitude of investigation, and the first question presented here is, whether the court did or did not exceed the utmost latitude allowable in such cases in the admission of testimony.

The first exception is to the offer of proof as to the acts of Tripner, on the trial of a former ejectment for this property in the District Court, wherein it was alleged that he gave a witness for the plaintiff money for the corrupt purpose of affecting his testimony. It was not alleged that there was any evidence of complicity on the part of Mrs. Tripner in this transaction, or that she had any knowledge of it. Was it evidence against her?

[Tripner *et al. v.* Abrahams *et al.*]

We think not.　If true, it was the crime of the husband alone, so far as the proof shows anything.　But as it was a fraudulent disposition evinced, and an act in the very case trying, we think it was evidence to affect his interest, and his alone.　Before the act of one shall affect another, so as to involve him in imputed crime, combination to do the act, or at least a step in it, must be shown.　That was not done here, excepting only so far as the relation of husband and wife existed.　But it would be a harsh rule to impute to the wife the crimes of the husband, simply as a result of the existing relation.　I know of no rule for such a case, other than that regulating other accountable beings; they can only be involved by a complicity in wrongdoing.　It is too remote a test of the truth of her allegation that she paid with her own money for the property in litigation, that her husband attempted to bribe a witness on a former trial.　Both facts might have been true; and so far as she is concerned, not being at all implicated in the matter, it proved nothing against her case whatever.　In the absence of evidence against her, the testimony could only have effect because of the marriage relation—it had no other foundation to stand upon.　We have already intimated our opinion that this was insufficient.　I can conceive of nothing more damaging than such testimony would be in the hands of a skilful advocate before a jury; and certainly, as it was not an act involved necessarily in the controversy, it was a thing that an honest defendant would never think of being prepared to meet.　I say honest, because on this point Mrs. Tripner, unless implicated by proof, must be esteemed innocent.　I think, therefore, that the testimony should not have been admitted as affecting her; and restricted to the husband's case alone, if it could have any effect, it was properly admitted.

I fully concur in the views expressed in this case, that transactions about property between husband and wife are to be narrowly scanned, and that the law looks upon them with a jealous eye; but still their *bona fides* is not upon presumptions merely to be placed among impossible things.　With the view thus expressed of them, they are to be investigated with great care and caution, but, with this exception, the rules of law and evidence must be mainly the same as in other cases.　Equity has often recognised and maintained the possibility of married women standing in the relation of creditors to their husbands; and where it has been made to appear by clear and satisfactory evidence that conveyances have been made on such a consideration, they have been sustained: 10 Ves. 149; 2 Atk. 520; 1 Mad. Ch. C. 525; 2 Johns. Ch. Rep. 539; 1 Par. W. 125; 8 W. & S. 413.　We think the generality of the admission of this evidence was erroneous.　We see nothing to correct in the second assignment, and dismiss it with this brief notice.

[Tripner *et al. v.* Abrahams *et al.*]

The assignments of error upon the charge will be considered together. And I ought here to remark that it is evident we have but the skeleton of the charge as delivered; perhaps, however, this may enable us the more readily to comprehend its strength by a study of its exposed articulations and muscles. Be that as it may, it is all we have. The exception is to the following language of the learned judge:—

"The jury are to be satisfied beyond all reasonable doubt of her (Mrs. Tripner's) ability to pay this large sum of money. The law looks upon the transaction with jealousy, because its benevolence to married women is thus perverted to fraudulent purposes; it requires her to come into court with full proof, such as will relieve reasonable doubts. If you pause—or doubt upon her evidence, your verdict should be given to the plaintiff."

The complaint is that the rule here laid down, by which the jury were to be governed in considering the defendant's evidence, was too rigid and impracticable. In Gamber *v.* Gamber, 6 Harris 363, the learned judge, Black, C. J., did say something in one part of his opinion nearly like what was said above, viz.: "When property is claimed by a married woman, she must show by evidence which does not admit of a reasonable doubt, either that she owned it at the time of her marriage or acquired it afterwards by gift, bequest, or purchase." But he immediately added what must be considered as an exposition of what he meant by the language quoted: "In case of a purchase after marriage the burden is upon her to prove distinctly that she paid for it with funds which were not furnished by her husband. Unless rigid proof of her title is always required, no one can calculate the amount of injustice which the Act of 1848 will produce." The rule laid down here thus qualified, is somewhat short of that administered in this case. In Keeny *v.* Good, 9 Harris 344, by the same judge: "Clear and full proof that she paid for it (the property) with her own funds," seems to have been the rule, and, says the learned judge, "in the absence of such proof, the presumption is a violent one that her husband furnished the means of payment," citing Gamber *v.* Gamber, in which no such presumption is declared. In Hoar *v.* Axe, 10 Id. 381, the same judge declares the rule to be "that a married woman must prove by clear and satisfactory evidence" that she was the owner of the property before marriage "or acquired it in some way which excludes all reasonable suspicion that it is the husband's." In Auble *v.* Mason, 11 Casey 261, we said, "She must clearly make it appear that the means of acquisition were her own." So in Reamy *v.* Walker, 12 Id. 410, "her case requires her to show that after her marriage she received money or other property of her own by will, descent, conveyance, or otherwise." And in Rhodes *v.* Gordon, 2 Wright 277, "she was

[Tripner *et al. v.* Abrahams *et al.*]

bound to give clear and satisfactory proof that it was paid for out of her own funds." In substance, the same was held in Robinson *v.* Wallace, 3 Wright 129. In Hunter's Appeal, 4 Id. 194, the language is, " a clear case under the Acts of 1848 and 1850, of title in the wife must be shown."

These citations show that the question of ownership as between husband and wife is to be determined on the sufficiency of proof, as in other cases. Be it, that the proof by the wife must be clear and satisfactory, sufficient to repel all adverse presumptions; and I think this is right; if she fail the failure is in the want of affirmative evidence, and of this she cannot complain. But if the rule be that her case must be made so clear, that there must not be a doubt, and if a doubt exists it must operate affirmatively to induce a verdict against her, is, with every deference for the precision that characterizes the opinions of my learned brother, going too far. " If you pause or doubt upon her evidence, your verdict should be given to the plaintiff." This language, following the precedent remark that the law looks with jealousy at the transaction, was calculated to relieve the jury from any further duty than to entertain a doubt, and then determine against the defendant.

In criminal cases, reasonable doubts of whether the evidence proves guilt on the prisoner, acquits him, because the presumption of innocence is one of law and is only to be overcome by full proof. But even this is a different thing from saying " if you doubt upon the evidence," a part or the whole, you are relieved from reconciling testimony and justified in an affirmative finding upon the negative of a doubt. In other words, doubt enables a jury to affirm that the presumption of innocence is not overthrown, while doubts, qualified, if the rule asserted below be the true rule, overrules a presumption of honesty and establishes the pretensions of the wife to be fraudulent. None of us would be willing to have a jury addressed in a civil case, involving the ownership of property, merely upon the preponderance of doubts. A creditor who might be as likely as anybody else without many bowels of compassion, would always try the chances of raising a doubt, and thus, while the law would hold the word of promise to the ear of the married woman, would by such a rule be sure to break it to the hope. Without further enlarging, we think there was error in the charge, and the case must be retried in accordance with what the cases show the rule to be. We discover nothing else calling for remark in the charge.

It is not very apparent by the paper-books what proceedings were had in regard to the defendant William P. Corlies. Nothing could have been better calculated to confuse what would otherwise have been plain, than the special plea put in for him of a former disclaimer and a demurrer to it. He should simply have

[Tripner *et al. v.* Abrahams *et al.*]

disclaimed and repeated the disclaimer as often as he thought himself improperly charged. No replication would be needed to that. The plaintiffs, if they chose, might require the jury to be sworn as to him, and if they did not prove him in possession he would have a verdict and they would have to pay his costs. The only plea in ejectment is "not guilty." A disclaimer goes to a denial of both title and possession, and saves the plaintiff all trouble if he chooses to take the party disclaiming at his word, but if he does not he may try his chances of proving him in possession : in the event of his doing so, he will be entitled to a verdict. I understand that Corlies was ordered to put in a proper plea, as I discover no judgment on the demurrer ; and this was equivalent to treating his special plea as a nullity. If this were so, I think the court was right in so ordering. We see no error in this part of the case, but for the reasons already given we must reverse the judgment.

Judgment reversed, and *venire de novo* awarded.

WOODWARD, C. J., was absent at Nisi Prius when this case was argued.

READ, J., did not sit in this case, having been of counsel for the plaintiff.