ZIMMERMANN et al. v. WILSON, Internal Revenue Agent, et al.

No. 5951.

Circuit Court of Appeals, Third Circuit.

Feb. 11, 1936.

Henry S. Drinker, of Philadelphia, Pa., for appellants.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Montgomery B. Angell, of New York City, of counsel), for appellees Drexel & Co. and others.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, M. H. Eustace, and James E. Murphy, Sp. Assts. to the Atty. Gen., and Charles D. McAvoy, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for appellees Wilson and Wrigley.

Before BUFFINGTON and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the taxpayers, John E. Zimmermann and his wife, Sarah A. F. Zimmermann, filed a bill in equity, as a case arising under the Revenue Act of 1928, c. 852, 45 Stat. 791, against G. J. Wilson, Internal Revenue Agent in Charge, Internal Revenue Service, Philadelphia, Pa., Edmund J. Wrigley, Special Agent, the partnership of Drexel & Co., and the individual partners thereof. The bill prayed the grant of an injunction to prevent examination by the revenue officers of the taxpayers' bank books and of their dealings with Drexel & Co. as their bankers and brokers. The court granted an ex parte restraining order and set the case for hearing. Thereafter the revenue officers in charge, alleging "the facts set forth in the bill do not constitute a valid cause of action in equity against this respondent," moved the bill be dismissed. On the subsequent hearing, the court dismissed the bill, and this appeal was taken by the taxpayers.

The bill, which is not traversed, shows the taxpayers made their individual income tax returns for 1929 and 1930; that in May, 1931, and in July, 1932, the revenue agents examined such returns and were given "complete access to all the data they deemed relevant". Zimmermann's return was determined to be correct and was accepted as filed. Mrs. Zimmermann's was assessed with an additional tax of $3.15, which she paid. On the similar examination in July, 1932, of the returns for 1930, by the revenue agents, Mrs. Zimmermann's return was found correct, and Mr. Zimmermann was determined to be entitled to a refund of $2,681.29 by reason of his omission to make deductions from income amounting to $16,326.66. He was requested to make claim for such refund, which he did, and received a check therefor, with interest, from the Treasurer of the United States. During the entire two-year period subsequent to the filing of the respective returns —being the limitation period prescribed by the act for the assessment of taxes thereon—all the data pertaining to complainant's tax liability for the years in question were available to the revenue agents, including the records of Drexel & Co. and other brokerage and banking houses with whom complainants had had dealings. Neither of complainants executed a written waiver extending the limitation period for the respective taxes. No further examination thereof was made or requested until April 10, 1935, when the Commissioner made written demand on complainants for access to their books and records

for the years 1929 and 1930, without any charge that either return had been false or fraudulent with intent to evade tax. Complainants aver they have no knowledge or advice as to any errors or omissions in either of such returns and, on advice of counsel, refused to permit the requested examination; that on May 13, 1935, complainants were advised by defendants Drexel & Co. that they had received a letter from defendant Wilson requesting them to produce, for the inspection and examination of a designated internal revenue agent, all books, records, and papers containing information relative to complainant's accounts and transactions for the years 1929 and 1931, inclusive; that complainants, on May 14, 1935, instructed Drexel & Co. not to produce the same or submit them to representatives of the Bureau of Internal Revenue.

It further appears, as stated in the bill, that on May 23, 1935, there was served on Drexel & Co. and the individual partners thereof a summons with a duces tecum clause, entitled "Summons to Appear, to Testify and to Produce Books, Etc.," signed by defendant Wrigley, purporting to summon defendants Lloyd, Hopkinson, and Drexel & Co. (on pain of liability as prescribed by the law and regulations) to appear and testify before the undersigned agent on May 24, and directing them to bring all books and records maintained in any capacity by or for complainants and having any bearing on their gains, profits, or losses for 1929, 1930, 1932, and for prior periods bearing on these years. At the end of this "Summons" is a reference to section 145 (a) of the Revenue Act of 1932 (26 U.S.C.A. § 145 and note), which makes it a misdemeanor, punishable by $10,000 fine and one year's imprisonment, for any person willfully to fail to supply any information, required by the law or the regulations, for the purpose of the computation, assessment, or collection of income tax.

It follows, therefore, that the pleadings disclose a case where, three and four years after a due examination by the government agents, the income returns of both husband and wife were approved, where no allegation is now made of fraud, concealment, or wrongdoing of any kind by the taxpayers, and no contention made that the revenue agents who approved the returns made any mistake, oversight, or did not do their duty and, it may be added, where, on the hearing by this court, coun-sel were asked by the court what was the purpose and reason for their asserted right of a second search three and four years thereafter, they could give none save that they acted on the orders of their superiors.

We are not impressed with the contention that the granting of the injunction prayed for will cripple the hands of the taxing authorities. Every tax case stands on its own facts, and, in our view, under the facts of this case, the refusal by this court of injunctive relief would place in the hands of the superior officers of the revenue agents a power as dangerous to the citizen as were those colonial searches in view when the Constitution forbade unreasonable searches, for a search for which no reason can be shown is an unreasonable search. Nor are we moved by the contention that the action of the taxpayers' bankers and brokers, in the way of submitting the affairs of the taxpayers to an unreasonable search, can deprive this man and his wife of their constitutional protection against unreasonable search. It is Zimmermann and his wife, and not their bankers and brokers, who are the real and aggrieved parties before us. To say that their bank accounts, withdrawals, their loans and collateral deposits, are the property of their bankers and brokers, and the taxpayers have no right or standing to prevent an unreasonable search thereof, is to lose sight of substance and rest on shadow. Consider where such a holding would lead. Assuming the search made in this case was unreasonable and the taxpayer could legally resist it, and such unreasonable search of the taxpayers' papers was enjoined, how stands the case with their agents, the bankers and brokers? The bankers and brokers have no interest in contesting the search—and indeed, as contended, have no power to do so—but, when the notice to produce is served on them, coupled as it is with the assertion that noncompliance with the order will subject it to a law which provides: "Any person required under this title [chapter] to * * * supply any information, for the purposes of the computation, assessment, or collection of any tax * * * who willfully fails to * * * supply such information * * * shall * * * be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both" (Revenue Act 1932, § 145 (a), 26 U.S.C.A. § 145 and note), pru-

dence and regard for the banker's own alleged liability to criminal prosecution all unite to constrain him, by this covert threat of criminal action, to give to the revenue agents information of the private affairs of the taxpayers and, by indirection, give the government a searching power of the defendants' affairs which it cannot legally assert against the taxpayers themselves. And it is no answer to this to say that the government in the present case is not proposing to begin criminal proceedings. If so, then why cite this statement of criminal liability well calculated to alarm the bankers and lead to their complaisant yield to the demand? Nor can we close our eyes to the fact that the ordinary printed form which, as printed, referred to a proceeding the taxing authorities might institute in the District Court, has been changed by the insertion of additional words, "or other proceedings for failure to supply information required by law or regulation," and by an inserted reference to laws which provide, as above noted, for heavy fine and imprisonment.

We rest on substance when we regard the rights of Zimmermann and his wife and their rights as the real parties in interest are the questions at issue, and their bankers and brokers as mere agents. See Vollmer v. Newburger, 277 Pa. 282, 121 A. 56; Darlington's Estate, 147 Pa. 624, 23 A. 1046, 30 Am.St.Rep. 776. ·It is the right of the taxpayers, and not the course pursued by their bankers, that is here involved. It is the information the bankers' books contain, and not the books in which that information is recorded, that is the property right of these taxpayers, a property right this court protects by injunctive relief. But, apart from all questions of constitutional protection of statutes of limitation [see our case of Farmers' & Mechanics' Nat. Bank v. U. S., 11 F.(2d) 348, 349], we regard the search here asserted as a violation of the natural law of privacy in one's own affairs which exists in liberty loving peoples and nations—for no right is more vital to "liberty and the pursuit of happiness" than the protection of the citizen's private affairs, their right to be let alone. And that right extends to the records of his transactions from the unreasonable inspection and examination thereof by unwarranted governmental search. If due protection of this natural right be denied him by the courts, his other rights and his citizenship lose their value.

A hundred and fifty years ago the farseeing men who framed the Constitution, mindful of the fact that they had been wrongfully subjected to unreasonable search, placed the rugged barrier, "the right of the people to be secure in their * * * papers, * * * against unreasonable searches" (Const.Amend. 4), in the pathway of the government then to be established, and made the courts the stern guardians of that barrier if government was tempted to violate it. Regarding as unreasonable this second search, where no fraud, concealment, or wrongdoing by the taxpayer is involved, we remand the record with instructions to reinstate the bill and grant the injunction prayed for.