In re KEEGAN.

District Court, S. D. New York.
March 5, 1937.

Fox & Wintner, of New York City (Robert J. Fox, of New York City, Harvey D. Jacob, of Washington, D. C., and Robert P. Schur, of New York City, of counsel), for petitioner.

Lamar Hardy, U. S. Atty., of New York City (Jay Slonim, Asst. U. S. Atty., of New York City, of counsel), for respondent.

PATTERSON, District Judge.

A summons was served on Keegan, requiring him to appear before one Kunkel, an internal revenue agent, and testify as to the matter of the tax liability of a company by the name of Compania Navira Nacional. In issuing the summons the revenue officers assumed to be acting under authority of section 618 of the Revenue Act of 1928 (26 U.S.C.A. § 1514), to the effect that the Commissioner of Internal Revenue, in order to ascertain the correctness of any return or to make a return when none has been made, may by any officer or employee designated examine records and require attendance and take testimony of any person with knowledge in the premises. Keegan appeared in response to the summons and was sworn. After a few preliminary questions he was asked what records of customers' accounts were kept by a firm of bond dealers of which he was a partner. He declined to answer, stating that he had been harassed enough by agents coming repeatedly to his office and asking the same questions over and over. So the examination ended.

Kunkel then came here and asked for an order to compel Keegan to testify. By section 617(a) of the 1928 Act (26 U.S.C.A. § 1523), the District Court may compel a person to attend and testify in obedience to such a summons. Kunkel's petition showed the matters already stated. It also alleged that the inquiry concerned the tax liability of several others, in addition to Compania Navira Nacional, from 1916 to 1933, and that Keegan's firm had had financial dealings with several of the taxpayers under investigation. On the petition the court on January 20, 1937, issued an ex parte order directing Keegan to appear and give testimony in the matter of the tax liability of the named taxpayers. Keegan then made a motion to vacate the order. The moving papers state his belief that all the taxpayers concerned have paid all taxes truly

owed by them, that the time for assessing taxes against them has expired, and that the order requiring him to testify is contrary to the Fourth Amendment. Keegan also stated in an affidavit in support of his motion that prior to the service of the summons three internal revenue agents had visited him frequently at his office, had asked him numerous questions which he had answered, and had asked for firm records which he had produced. It is further shown that a matter of assessment of tax against one of the taxpayers, Interocean Oil Company, for 1917–1921 is now pending before the Board of Tax Appeals.

The papers submitted in opposition indicate that the inquiry as to tax liability is to ascertain whether fraud was committed; that the internal revenue agents in charge expect that Keegan's testimony will be of value in the inquiry; that while agents have visited his office on nine or ten occasions, have asked him questions, and have examined records, he has never before been asked to give testimony under oath.

On the surface the summons served on Keegan was a proper one and the order of the court directing obedience to the summons was likewise proper. It is shown that an inquiry is under way as to whether certain taxpayers committed fraud in filing tax returns. If they did, there is no limitation as to the time when the revenue officers may take steps to collect the taxes actually owing. Both the summons and the order seem to be within the authority given by the Revenue Act now in force. The only matters for consideration therefore are those which Keegan relies on as indicating an abuse of power by the revenue agents.

There is no substance in the point that the pendency of a proceeding in the Board of Tax Appeals suspends the power of inquiry. That proceeding involves a matter much more limited in scope than the present inquiry. But even if the proceeding before the Board covered the same taxpayers and the same periods, the right of inquiry would not be affected. Bolich v. Rubel, 67 F.(2d) 894 (C.C.A.2).

The Fourth Amendment is invoked. There are several reasons why obedience to the summons will not result in an unreasonable search and seizure of Keegan's books and papers. As good a one as any is that the summons does not require production of

any books or papers. It calls simply for his appearance and testimony.

The examination sought is called a "fishing expedition." Of course it is a fishing expedition, but it is none the less an examination which the revenue officers are entitled to make. I take it that whenever the officers charged with gathering in income tax decide to make a check to see whether a taxpayer has paid the full amounts due, they are doing no more than their duty when they summon persons with whom the taxpayer may have had dealings of a financial nature to reveal those dealings and when they appeal to the courts to enforce the summons in case of disobedience.

The only point that has any merit is the one made by Keegan when he appeared for examination—that he had already been pestered enough in a matter that was no concern of his. The right of examination may be abused, and persons in Keegan's position may well feel annoyance at interruptions that seem to be frequent and futile. The court will not give assistance to a summons if abuse is plainly proved. Yet I cannot say at this point that there has been abuse here, in view of the fact that this is the first examination under oath.

The motion to vacate the order requiring obedience to the summons will be denied.