ZIMMERMANN et al. v. WILSON, Internal
Revenue Agent, et al.
No. 8671.

District Court, E. D. Pennsylvania.
Sept. 16, 1938.

Henry S. Drinker, Jr., and Drinker, Biddle & Reath, all of Philadelphia, Pa., for plaintiffs.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Andrew D. Sharpe, Sp. Asst. to the Atty. Gen., and James E. Murphy and James W. Morris, Asst. Attys. Gen., for defendants.

KIRKPATRICK, District Judge.

The prayer of this bill in equity is for an injunction, restraining the defendant revenue agents from making any examination of the records and papers of the plaintiffs, and restraining the defendant brokers from permitting the agents to make any examination of their accounts with the plaintiffs. The case is before the Court for disposition on final hearing. My conclusion is that the bill must be dismissed, and I shall state the facts and my reasons.

The plaintiffs, who are husband and wife, filed separate income tax returns for the years 1929 and 1930, in which each reported a number of sales of stock and claimed large losses by reason of them. The returns were audited by agents in the years 1931 and 1932, respectively, and, with some comparatively small adjustments, were finally approved. At the time their returns were audited the plaintiffs gave the agents full access to their books and records, and if the agents had placed side by side the two separate stock register books which the plaintiffs kept they would have seen that in each instance of a large sale of stock by one plaintiff there was a record in the book of the other of a corresponding purchase on the same day and in a like amount, and they could easily have drawn the inference that the sales reported were between husband and wife. The plaintiffs were not at the time required by law to disclose the fact that the sales were husband and wife transactions, they did not do so either in their returns, books, or otherwise, and the agents passed the returns without finding it out.

Later on, in 1933, upon a check by the Government of the books of Glendenning and Company, one of the brokers through whom the sales were made, it was discovered that some of them were transactions between husband and wife. The agents

then went to Drexel & Company, now a defendant, who had also acted as bankers and brokers for the parties and were about to make an examination of their books when they were stopped by a temporary restraining order issued upon this bill. The brokers were also made defendants, since it was not clear that they would refuse to allow the examination.

After a preliminary hearing this Court held that, since it did not appear that the Government had taken or was about to take any steps to require the production of the brokers' books or to compel the taxpayers to submit to an examination of their own records, the only question involved was whether the brokers could be restrained from making the equivalent of a voluntary disclosure by permitting the agents to examine their books; the bill was dismissed on the ground that the plaintiffs had no property right in the information contained in the brokers' records.

The Circuit Court of Appeals reversed the decree, 3 Cir., 81 F.2d 847, and directed a preliminary injunction to issue as prayed for. While the Circuit Court of Appeals held that the rights of the plaintiffs as the real parties in interest were at issue, it does not appear from the opinion that the Court considered that any matter other than the right of the Government to examine the brokers' records was involved. The holding of the Circuit Court of Appeals was in substance that the plaintiffs had a property right in the information contained in the brokers' records, and that the proposed examination was (a) an unreasonable search within the prohibition of the Constitution, and also (b) a violation of the natural law of privacy in one's own affairs—the right to be let alone. Having decided that the plaintiffs had a property right in the information contained in their brokers' books, the injunction necessarily followed because at that time the Government had not disclosed any reason whatever for undertaking the examination, and, of course, no one, not even the Government, can pry into the private papers and records of a citizen merely because he wants to.

A different and broader issue is now presented. The Government has stated that it has reason to believe that, if it is permitted to make the proposed investigation, it will appear that the sales were fraudulent, and evidence has been produced in support of its position. It proposes to examine not only the brokers' records but also those of the taxpayers.

The question is whether the proposed examination is a reasonable exercise of the Government's power. The Constitution secures citizens from unreasonable searches, U.S.C.A.Const. Amend. 4; the statute (Sec. 1105 of the Revenue Act of 1926, 26 U.S.C. A. § 1521) forbids a further examination after one has been made unless the same is necessary, and "necessary" in the context means reasonable; any right of privacy or to be let alone must yield to the reasonable exercise on the part of the Government of its power of investigation in aid of the collection of taxes.

The ruling of the Circuit Court of Appeals did not deal with the issue thus presented. The opinion carefully points out that " * * * no allegation is now made of fraud, concealment, or wrongdoing of any kind by the taxpayers, and no contention made that the revenue agents who approved the returns made any mistake, oversight, or did not do their duty * * ." [81 F.2d 848] and in the concluding sentence says, "Regarding as unreasonable this second search, where no fraud, concealment, or · wrongdoing * * * is involved * * *." In the present case fraud, as the ultimate ground for the examination, is clearly involved, and the Government alleges oversight by the revenue agents who approved the returns in failing to discover what the taxpayers did not disclose.

I have said that fraud is ultimately involved, but that does not mean that it must be proved in this suit. This is not a proceeding to collect a tax, in which fraud must be proved in order to escape the bar of the statute of limitations. What is involved here is the right to make an examination to determine whether or not there is sufficient reason to justify a proceeding to collect the tax.

It seems plain that upon such an issue the Government need not prove fraud or even show a prima facie case. In Re Andrews' Tax Liability, D.C., 18 F.Supp. 804, 805, the rule was plainly stated. The Court said, "The question thus presented is whether the authority of the court should be exercised to require the respondents to submit to the examination without the prior establishment of fraud by the taxpayer. * * * Here we are dealing with a situation where * * * the Government has

shown what may be fairly stated to be reasonable grounds of suspicion or probable cause for the examination to ascertain if there has been fraud. It follows that the examination * * * is not unreasonable or oppressive and the defendant administrators should be required to submit thereto." This may be taken as a statement of the law applicable, and it is not necessary to discuss the much argued question whether the facts in the Andrews Case were in all respects exactly the same as those now before the Court. "Reasonable grounds of suspicion" and "probable cause for the examination to ascertain if there has been fraud" are terms which embrace a wide range of situations, and there will be all manner of gradations within their limits. I shall not attempt to formulate a more precise rule, but I hold that under the facts in this case it is not unreasonable for the Government to make the re-examination proposed.

The evidence here shows that the losses claimed were based upon certain sales of stock which now appear to have been between a husband and his wife, though not disclosed by the taxpayers as such; that the husband exercised practically unlimited control of his wife's property and affairs; and that many, if not all, of the transactions as to which loss was claimed were conducted entirely by the husband without his wife's knowledge and without any personal participation by her. The question whether the husband ever actually relinquished control or dominion over such of his securities as were ostensibly sold to his wife is a vital one and goes directly to the issue of fraud. If he did not, those transactions regardless of form were not genuine sales. Obviously the question cannot be properly resolved without a full examination.

■ Under the circumstances I do not think that the fact that the agents were not sufficiently alert to discover the situation upon the first examination makes this request for a re-examination unreasonable. The ascertainment and enforcement of tax obligations is not a game in which a false move is to be penalized by a procedural bar of some kind. The only question is whether, under the circumstances, more than one examination is an unreasonable encroachment upon the right to be let alone which the constitution protects.

■ I think it will be agreed that the extent to which any individual may assert that right against his government will depend somewhat upon the position in which he has chosen to place himself. When a taxpayer adopts a tax avoidance device the legitimacy of which depends upon its genuineness—a device which has been in countless cases used as a means of fraudulent evasion—I think he has somewhat narrowed his right to be let alone. Where, as here, his exemption from tax liability depends upon whether a transaction is in fact what it appears to be, he must expect that the real transaction underneath the surface appearance of regularity will be subjected to a searching examination—an examination which, if it is to be of the slightest value, must cover a wide field and may involve many apparently unrelated portions of the taxpayer's private affairs.

Much testimony was produced by the plaintiffs to support the genuineness of the stock sales, and it undoubtedly did show that the forms observed were all in order. But the plaintiffs' argument that, because the evidence which they elected to produce shows apparently legitimate and regular sales, a re-examination is unreasonable, merely begs the question. What the Government asks is an opportunity to determine upon adequate information whether or not the transactions are what they appear to be. It cannot possibly do so without the investigation which it wishes to make. The fact that the taxpayer can make a showing of perfect regularity upon evidence and documents which the Government has no real opportunity to check up and correlate does not, in a case of this kind, touch the real issue.

This decision is limited to a ruling that a re-examination for the purpose of determining whether or not the husband and wife stock sales were or were not fraudulent, is reasonable. If wholly unrelated transactions should be brought in question, as the plaintiff argues they may be, and facts bearing upon a different tax liability discovered, the question whether such evidence was obtained by an unreasonable exercise of the right of examination and search might arise in a subsequent proceeding to collect additional tax. It is not now before the Court.

The bill may be dismissed with costs.