ZIMMERMANN et al. v. WILSON, Internal Revenue Agent, et al.

No. 6934.

Circuit Court of Appeals, Third Circuit.

June 19, 1939.

BUFFINGTON, Circuit Judge, dissenting.

———◆———

Henry S. Drinker, of Philadelphia, Pa., for appellants.

James J. Morris, Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and James E. Murphy, Sp. Assts. to Atty. Gen. (J. Cullen Ganey, Jr., U. S. Atty., of Bethlehem, Pa., and Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., of counsel), for appellees.

Before MARIS, BIDDLE, and BUFFINGTON, Circuit Judges.

BIDDLE, Circuit Judge.

Appellants, John E. Zimmermann and his wife, brought a bill in equity in the District Court of the United States for the Eastern District of Pennsylvania, in May, 1935, against two Internal Revenue agents and the partners of Drexel & Company, to restrain the agents from proceeding with an investigation of the Complainants' income tax returns for the years 1929 and 1930. The agents had issued a summons requiring the other defendants to produce their accounts relating to the complainants' transactions during 1929, 1930 and 1932. Judge Kirkpatrick granted a temporary restraining order; dismissed the bill on the Government's motion, and filed

an opinion[1] pointing out that the question of the Government's power to examine books after the running of the statute without showing fraud was not involved, since no compulsory process was being attempted; that the brokers were making no objection; and that the transactions in question did not involve the kind of secrecy protected by the law.

On appeal this Court reversed with directions to enter the injunction prayed for, holding the Zimmermanns, and not Drexel, the brokers, to be "the real and aggrieved parties"; and that they might therefore object to what the Court held to be an unreasonable search, protected by the Fourth Amendment, U.S.C.A.Const., —a "property right" of the taxpayers. 3 Cir., 81 F.2d 847. The search was regarded by the court as "a violation of the natural law of privacy". The defendant revenue agents filed an answer to the bill in which fraud on the part of the taxpayers was alleged. Drexel & Company did not file any answer. After evidence was offered by both parties, Judge Kirkpatrick entered findings of fact, and dismissed the bill on the ground that the Government had shown sufficient reason to justify the investigation. 25 F.Supp. 75. From this decision complainants appeal to us.

Complainants, who are husband and wife, filed separate income tax returns for the years 1929 and 1930, which were approved by the agents, who had full access to complainants' books. In 1933, after ordinary assessment was barred by the two year limitation, the agents discovered upon a check of the books of Glendinning & Company, one of the brokers involved, that certain sales of stock, on which large losses had been taken, appeared to be between husband and wife. At that time there was no requirement that a taxpayer should disclose this fact, and the Zimmermanns did not do so. The agents sought further information from Drexel & Company, were refused access to the information by Drexel, acting under complainants' directions; issued a summons to Drexel[2], but were stopped by the restraining order and preliminary injunction.

From the evidence it appears that Mr. Zimmermann exercised unlimited control over his wife's stock transactions, and conducted them without her knowledge or

---

[1] Not reported.

[2] The Revenue Act of 1926, c. 27, § 1105, 44 Stat. 113, 26 U.S.C. § 1521, 26 U.S.C.A. § 1521, provides: "No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

Pursuant to this section the Commissioner by letter dated April 10, 1935, advised the complainants that "it was deemed necessary, before finally closing complainants' cases, to make a reinvestigation of their respective books of account and records for the years 1929 and 1930 in order properly to verify their returns for those years. * * * "

The examination of the records by the Commissioner is authorized by Section 1104 of the Act of 1926, as amended (26 U.S.C., § 1514, 26 U.S.C.A. § 1514): "The Commissioner, for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made, is authorized, by any officer or employee of the Bureau of Internal Revenue, including the field service, designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons."

The Revenue Act of 1928, c. 852, 45 Stat. 856, 857, provided: "Sec. 275. Period of Limitation Upon Assessment and Collection.—Except as provided in section 276—(a) General rule. The amount of income taxes imposed by this title shall be assessed within two years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

"Sec. 276. Same—Exceptions.—(a) False Return or No Return.—In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U.S.C.A. §§ 275, 276.

participation.[3] If he never actually relinquished this dominion, as the learned trial judge pointed out, the sales were not genuine. Only a full examination can determine the question.

In his income tax return for 1929 Mr. Zimmermann reported a net loss of $146,119.07 on sales of securities. Of his gross losses $417,870.31 related to sales of securities in transactions involving his wife. If these losses were eliminated the Government estimates his net gain at $271,751.24, and the tax adjustment at approximately $86,753.96. For 1930 Mr. Zimmermann used losses of $123,759.63 on similar transactions. Mrs. Zimmermann in computing a net loss of $54,634.53 on sales of securities used losses aggregating $143,401.63 in transactions involving her husband. If these losses were not allowed an additional tax of $29,846.76 is claimed.

The gross losses of $417,870.31 resulted from sales of sixteen securities in December, 1929. Similar purchases in kind and quantity were made for Mrs. Zimmermann's account by her husband acting as her agent. In December 1930 four of these sixteen items were sold by Mrs. Zimmermann through her husband's agency for losses, and we find similar reacquisitions by Mr. Zimmermann on his own account on the same day. These sales made up the $53,476.56 loss claimed by Mrs. Zimmermann. Six of the twelve stocks sold by Mr. Zimmermann in November and December 1930, for the loss of $123,759.63 were acquired for Mrs. Zimmermann's account on the same day. In 1930 Mrs. Zimmermann claimed losses on sales of six stocks, including the four referred to above, which were reacquired on the same day by Mr. Zimmermann.

Complainants argue that on their face these transactions are legitimate. That may be; but the Government wishes to dig under the surface; a device used to avoid taxes is subject to careful scrutiny[4]; transactions between husband and wife look suspicious[5]. The examination, as the trial judge says, "must cover a wide field and may involve many apparently unrelated portions of the taxpayer's private affairs." It is not unreasonable to allow the Government to obtain all available information. The running of the statute does not alter the reasonableness of such a course.

Moreover, it is impossible to determine in this proceeding whether examination of any particular records by the agents would or would not be reasonable. The Fourth Amendment protects against unreasonable searches; and "the search is 'unreasonable' only because it is out of proportion to the end sought"; McMann v. Securities and Exchange Comm., 2 Cir., 87 F.2d 377, 379, 109 A.L.R. 1445 [6] involving similar facts. Agents may not "under official pretext but in fact officiously, extend their powers beyond those provided by the law. * * *" Newfield v. Ryan, 5 Cir., 91 F.2d 700, 703, certiorari denied 302 U.S. 729, 58 S.Ct. 54, 82 L.Ed. 563. If they attempt to examine unrelated transactions, or to engage in an irrelevant "fishing expedition", as complainants suggest, they may be restrained by the court to whom application is made to enforce compliance. There a precise rule can be formulated from a definition supplied by the facts. But this is not such a proceeding.

Appellants cite cases which formulate principles to determine the bona fides or fraud of sales of securities between husband and wife to establish tax losses. But these are not applicable to the simpler question before us. That the burden is on the government to establish fraud beyond a mere suspicion, and the presumption of innocence is a strong one, that motive is unessential and the financial ability of the purchaser, whether the sales were at market values, the absence of any agreement—all these considerations go to the question of whether fraud is established. That is not before us. The Government is merely seeking further information.

Since our former decision the Circuit Court of Appeals for the Second Circuit in McMann v. Securities and Exchange Comm., supra, has held, on an application involving a similar situation, that immunity under the Fourth Amendment is a personal right, not evocable by the cus-

---

[3] He testified: "I made the decision * * * for the sale of those securities of mine, and I also made the decision that those or like securities should be bought * * * for my wife's account."

[4] S. A. MacQueen Co. v. Commissioner, 3 Cir., 67 F.2d 857, 858.

[5] Tripner v. Abrahams, 47 Pa. 220, 227.

[6] Certiorari denied McMann v. Engel, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342.

586

tomer who cannot object to the production of papers belonging to his broker. No protection was afforded him by the relationship, which was not confidential, such as that of client, penitent, patient or spouse. There the Securities and Exchange Commission was seeking information to determine whether practices existed which the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., had made unlawful; here similar information is sought under the revenue statute. The court refused to follow our decision.

Following the McMann case Judge Patterson, then a District Judge for the Southern District Court of New York, now on the Circuit Court of Appeals for the Second Circuit, held that an executrix could not object to the issuance of a summons to a bank for the production of papers belonging to the bank relating to the income liability of the decedent, where the statute had run: In re Upham's Income Tax, D. C., 18 F.Supp. 737; and similarly as to the examination of a broker who had had financial dealings with the taxpayer, although the statute had run, where fraud was involved, In re Keegan, D.C., 18 F. Supp. 746.

In Newfield v. Ryan, supra, telegrams were subpoenaed from the telegraph companies by the Securities and Exchange Commission. The court held that the senders could not invoke the protection of the Amendment; nor can a bank, called on to produce books and papers material to the investigation of a taxpayer's return, United States v. First National Bank, D.C., 295 F. 142, affirmed 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796; for the owner alone can object, and invoke the protection of the amendment.[7]

■ Our present view that a third party is not entitled to invoke the protection of the Fourth Amendment brings our decision in line with the overwhelming weight of authority.

In Re Andrews' Tax Liability[8] Judge Chestnut had before him the Commissioner's petition to enforce obedience to a subpoena directed to the taxpayer's adminis-

trator and the broker to obtain further light on transactions between husband and wife which might be fraudulent, and permitted a further examination of the broker's books, after the statute had run, deeming that actual proof of fraud was not necessary, but that a showing of reasonable ground of "suspicion of fraud" was enough. Judge Kirkpatrick doubted the ability of the court to pick a phrase defining the precise shade of suspicion, and said that the evidence established probable cause. In this we concur. We rest our decision on the ground that a further search, under the circumstances, cannot be termed unreasonable.

From what we have said the judgment must be affirmed.

BUFFINGTON, Circuit Judge, dissents.

See 81 F.2d 847.

---

[7] Essgee Co. v. United States, 262 U.S. 151, 158, 43 S.Ct. 514, 67 L.Ed. 917; Hale v. Henkel, 201 U.S. 43, 69, 26 S. Ct. 370, 50 L.Ed. 652; Coon v. United States, 10 Cir., 36 F.2d 164; Simmons v. United States, 8 Cir., 18 F.2d 85; Graham v. United States, 8 Cir., 15 F.2d 740;

Rouda v. United States, 2 Cir., 10 F.2d 916; Guckenheimer & Bros. Co. v. United States, 3 Cir., 3 F.2d 786; Remus v. United States, 6 Cir., 291 F. 501; United States v. Zafrin, D.C., 22 F.Supp. 601, affirmed 2 Cir., 95 F.2d 1022.

[8] 18 F.Supp. 804, 807, D.C.Maryland.