Application of John A. HOWARD to Quash Summons Issued to Him by the Internal Revenue Service in Connection With His Tax Liability and to Vacate the Service in Connection With His Tax Liability and for a Temporary Stay of the Special Agents Hearing Pending Decision of the Application to Quash and Vacate.

Misc. No. 3024.

United States District Court
W. D. Pennsylvania.

Nov. 2, 1962.

McArdle, Harrington & McLaughlin, Pittsburgh, Pa., for plaintiff.

Joseph S. Ammerman, U. S. Atty., Pittsburgh, Pa., for defendant.

DUMBAULD, District Judge.

The instant proceeding involves an application to quash an internal revenue summons issued on August 16, 1962, pursuant to 26 U.S.C. § 7602(2). The summons is addressed to John A. Howard, President of a corporation known as Langley Howard, Inc. and purports to be issued in connection with investigation of the tax liability of applicant and his wife Margaret L. Howard for the years 1956, 1957, 1958, and 1959.

This summons was accompanied by a letter to the taxpayers dated August 15, 1962, stating that a reinvestigation for the years 1956 and 1957 was "deemed necessary".

In that respect the summons differed from one previously quashed by this

Court under 26 U.S.C. § 7605(b).[1] The Government's motion to dismiss for lack of jurisdiction also brought before the Court an affidavit by Special Agent William W. Ankrom of the Intelligence Division.

After argument, this Court made its order of September 24, 1962, quashing the new summons as to the years 1956, 1957, and 1958. This order adhered to the views taken with respect to the prior order quashing the earlier summons.

Those views were based upon cases cited by applicant's counsel at the hearing on the earlier summons, which appeared to be in point and which the Court accepted as authoritative. This opinion is now written to explain the Court's reasoning in sufficient detail to permit adequate appellate review.

We rejected the Government's contention that this Court had no jurisdiction to quash an internal revenue summons, as being an unconsented to suit against the United States, upon the authority of Application of Colton, 291 F.2d 487 (C. A.2, 1961). There being no decisions of this District, of the Third Circuit or of the Supreme Court available, we accepted the Second Circuit case as authoritative and well-reasoned; all the more so inasmuch as one of the panel happened to be the late esteemed Judge Goodrich of the Third Circuit, and inasmuch as the opinion was written by the eminent Judge Henry Friendly whose learning we have respected since law school days and who is reputed to have earned the highest grade ever attained in the Law School since Mr. Justice Brandeis. Chief Judge Lumbard is also a noted graduate of the same Law School. We candidly confess that we relied upon this case in making our order here involved, as well as the one relating to the earlier summons.

We also gave weight to the proposition that if a judicial subpoena can be quashed upon constitutional grounds [Hale v. Henkel, 201 U.S. 43, 76, 26 S.Ct. 370, 50

1. The earlier summons dated August 2, 1962, was dealt with by this Court's order of August 15, 1962, at Misc. No. 3019.

L.Ed. 652 (1906)], an administrative subpoena should also be quashable *a fortiori*.

We also accepted the case of Zimmerman v. Wilson, 105 F.2d 583, 586 (C.C.A. 3, 1939), cited by applicant, to the effect that when a reinvestigation is made under 26 U.S.C. § 7605(b), of a tax year as to which the statute of limitations has run except with respect to fraud violations, the mere *ipse dixit* of the internal revenue official that re-examination is "deemed necessary" is not conclusive; but that the Government must set forth facts (not mere conclusions or opinions) sufficient to convince the Court that reasonable ground exists to suspect fraud. In our judgment the affidavit of Ankrom did not meet this test, but was merely a statement of conclusions. Inasmuch as no sufficient facts were alleged, it was not appropriate to take any testimony to establish the allegations set forth.

These are the reasons which led to the order of September 24, 1962, insofar as it quashed the summons as to the years 1956, 1957, and 1958. It remains to consider why it was not quashed as to the year 1959.

It was the Court's opinion that with respect to a tax year as to which the statute of limitations had not yet run it was not proper for a judicial tribunal to interfere with the collection of taxes. *Omnia praesumuntur rite esse acta.* U. S. v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926).

This situation we believed, was quite different from that with respect to a year where the possibility of collection was extinct and the internal revenue agents were obviously merely seeking to build up a criminal case on grounds of fraud.

Since making the order of September 24, 1962, we have had occasion to consider the subject more attentively in connection with another similar case, Application of Joseph Barletta, Misc. No. 3031, and have re-examined the allegations made by applicant Howard.

In Barletta's case, there was no allegation such as Howard makes that he was the only person having pecuniary interest in the corporation. We therefore concluded that Barletta had no constitutional standing to object to production of corporate records. U. S. v. White, 322 U.S. 694, 698–699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). We shall assume *arguendo* that Howard can overcome this hurdle, and that, as he alleges, the records involved are his own personal papers.

■ We then confront the chief issue applicant is interested in raising, to wit, whether a summons issued under 26 U.S. C. § 7602(2) may be used in a criminal case or is limited to determining the amount of tax liability of a taxpayer.

The wording of the statute indicates that the examination authorized must be for the purpose of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax."

Accordingly, the statutory authorization is broad enough to cover both civil and criminal investigations with regard to the specified topics, so long as no valid constitutional privilege is interposed. See, e. g., Zimmerman v. Wilson, 105 F. 2d 583, 586 (C.C.A. 3, 1939), where records of a third party were under scrutiny, who had no constitutional privilege.

But the correctness of a return or the amount of tax liability could be a very vital link in the chain establishing guilt in a criminal tax fraud case. See Hoffman v. U. S., 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

■ Therefore, even though the examination of records be within the scope of the statutory authorization, it could be prohibited, in a proper case, by an assertion of constitutional privilege against self-incrimination.

Where a Special Agent of the Intelligence Division, such as Mr. Ankrom the affiant in this case, takes part in an investigation, it is conceded by the Government that possible criminal prosecution is involved. It is insisted, however, that collection of revenue is also involved, although the primary emphasis is on prosecution.

**304**

Therefore in a proper case the privilege becomes operative.

■ In that connection, it should be noted also that with respect to records which the law properly requires a taxpayer to keep for the purpose of facilitating collection of taxes, there exists no privilege. See Dumbauld, The Bill of Rights and What It Means Today, 85, and cases there cited.

■ Therefore, with respect to a tax year which is still open (in this case 1959) all records which are not privileged must be produced.

■ Applicant alleges that the records are sought for use in a pending criminal case (No. 61–316) against applicant and his corporation for violation of the Securities Act of 1933. This of course would be an improper purpose. U. S. v. O'Connor, 118 F.Supp. 248, 250–251 (D. Mass.1953). The Government asserts that the information is sought solely for tax purposes, although *inter alia* for investigation with a view to possible criminal prosecution for tax fraud.

While we are satisfied that the tax authorities are entitled to investigate an open year for tax collection purposes, and to investigate with a view to criminal prosecution with respect to tax matters, insofar as no valid claim of privilege is interposed, we think that further safeguards should be imposed in the Court's order to prevent misuse of the information obtained.

■ We are also inclined to follow a recent decision by the Second Circuit which has come to our attention, In the Matter of the Tax Liability of Reuben Turner, 309 F.2d 69, that the proper method of claiming privilege is to do so when specific questions are asked or demands made, rather than by a motion *in limine* to quash the summons *in toto*. The Government and applicant will be expected to follow this procedure.

## ORDER

AND NOW, this 2nd day of November, 1962, after argument, IT IS ORDERED that motions of the Government filed September 24, 1962, and its motion filed October 5, 1962, be and the same hereby are denied and dismissed, and that the order of this Court dated September 24, 1962, shall stand and remain in force as the considered judgment of the Court, for the reasons set forth in the foregoing opinion.

AND IT IS FURTHER ORDERED, that with respect to the tax year 1959 applicant John A. Howard as President of Langley Howard, Inc., shall produce for inspection of the Internal Revenue agents such of the books and records called for by the summons dated August 16, 1962, as are corporate records as distinguished from personal papers of applicant; provided that (1) no item shall be produced which would not have been kept as a corporate record by an ordinary business corporation, as distinguished from a personally owned company in which no person other than the sole stockholder has any pecuniary interest; (2) no item shall be produced as to which applicant has a valid constitutional privilege against self-incrimination, and shall claim such privilege at the time the item is specifically demanded; (3) no records examined or information obtained shall be communicated to persons other than duly authorized and concerned Internal Revenue employees, nor shall such data or information be used for any purpose except enforcement of the Internal Revenue Laws of the United States, and in particular no such data or information shall be communicated to or used by Government counsel or employees concerned in the prosecution of the pending criminal case against applicant at No. 61–316, or any other criminal case against applicant or any other person, except cases involving violation of the Internal Revenue Laws of the United States.