Application of the UNITED STATES, Appellee, for an Order compelling Earl J. CARROLL, Appellant, to comply with an Internal Revenue Summons.

No. 362, Docket 24468.

United States Court of Appeals
Second Circuit.

Argued June 4, 1957.

Decided July 8, 1957.

Hodges, Reavis, McGrath & Downey, New York City (John P. McGrath, Martin D. Jacobs and Martin H. Proyect, New York City, of counsel), for appellant.

Paul W. Williams, U. S. Atty. for S. D. of New York, New York City (Foster Bam and Miriam R. Goldman, Asst. United States Attys., New York City, of counsel), for appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Appellant, an American citizen, lived and practiced law in Germany for most of the time from 1946 to 1954. During that period, he numbered among his clients Alfred Krupp von Bohlen and Halback, and Frederick Flick, the German industrialists. He may have

earned a substantial amount of money from his practice, but he reported none, claiming to be within the exemption of Section 116 of the Internal Revenue Code of 1939 (substantially re-enacted I.R.C.1954, Section 911, 26 U.S.C.A. § 911), which applies to wages, salaries, professional fees and other amounts received as compensation for personal services actually rendered, earned without the United States by an American citizen who establishes to the satisfaction of the Secretary that he is a bona fide resident of a foreign country.

Acting pursuant to authority conferred by law,[1] agents of the Internal Revenue Service summoned appellant to appear and give testimony relative to his residence and earnings in Germany. At hearings on August 16 and 17, 1956, appellant testified at length concerning his residence abroad. He refused, however, to answer questions relating to the following matters:

(a) The contractual and financial terms between Earl J. Carroll and Alfred Krupp von Bohlen and Halback during the years 1944 through 1954.

(b) The contractual and financial terms between Earl J. Carroll and Frederick Flick during the years 1944 through 1954.

(c) Any and all information concerning other income earned in Germany or other foreign countries during the years 1944 to 1954, inclusive.

His refusal was based on the ground that he had conclusively demonstrated his bona fide residence in a foreign country, thus rendering investigation of his earnings there "unnecessary" within the meaning of I.R.C.1954, Section 7605(b), 26 U.S.C.A. § 7605(b).[2]

The agents then sought and obtained from the District Court an *ex parte* order compelling appellant to testify in accordance with the summons that had been served upon him. Appellant thereupon moved the District Court to vacate the *ex parte* order, which motion was denied by Judge Edelstein, in an opinion reported at 149 F.Supp. 634, and this appeal followed. We think the decision and reasoning of the District Court were correct.

Appellant relies on two cases in particular to support his position. In Martin v. Chandis Securities Co., 9 Cir., 128 F.2d 731, the court affirmed an order of the court below quashing a previous order compelling testimony, on the ground that the testimony was "unnecessary" because the application for the initial order showed on its face that the claim was barred by limitations. The Government contended in that case that since a claim based on fraud would not be barred, further investigation was not "unnecessary." The parties agreed

---

1. The Internal Revenue Code of 1954 provides in pertinent part (omissions not indicated):

    "§ 7601. The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax."

    " § 7602. For the purpose of determining the liability of any person for any internal revenue tax, the Secretary or his delegate is authorized—

    "(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

    "(2) To summon the person liable for tax, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate and to produce such books, papers, records or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

    "(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

    "§ 7604. The United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."

2. "No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

that the Government was obliged to allege only reasonable grounds for suspicion of fraud, and the court expressly refrained from expressing an opinion on what the Government must allege. The holding was that the Government had not shown such grounds.

In In re Brooklyn Pawnbrokers, Inc., D.C.E.D.N.Y., 39 F.Supp. 304, 305, Judge Moscowitz held that, where the Government is investigating a claim barred by limitations in the absence of fraud, a general allegation of fraud is insufficient, that the Government is required to set forth facts affording reasonable basis for a suspicion of fraud. The holding was that "to permit the government to examine as to statute barred years upon a mere conclusory allegation of fraud is to deprive the taxpayer of that freedom from unreasonable harassment which he has a right to expect under a democratic form of government."

There are cases going the other way. In In re Keegan, D.C.S.D.N.Y., 18 F. Supp. 746, 748, the person summoned likewise objected that the statute of limitations had run. The Government said merely that it wished to investigate the possibility of fraud, to which it was replied that this was a "fishing expedition." Judge Patterson refused to vacate the order requiring obedience to the summons, saying, "Of course it is a fishing expedition, but it is none the less an examination which the revenue officers are entitled to make. I take it that whenever the officers charged with gathering in income tax decide to make a check to see whether a taxpayer has paid the full amounts due, they are doing no more than their duty when they summon persons with whom the taxpayer may have had dealings of a financial nature to reveal those dealings * * *."

In another case in which the investigation was said to be "unnecessary" because of the statute of limitations, Peoples Deposit Bank & Trust Co. v. United States, 6 Cir., 212 F.2d 86, 87, certiorari denied 348 U.S. 838, 75 S.Ct. 37, 99 L.Ed. 661, "a special agent of the Bureau of Internal Revenue testified in substance, that from his investigation he had concluded that there was strong suspicion of a false or fraudulent tax return by E. F. Prichard, Sr., for a certain year or years prior to the statutory limitation." The court held that "The special agent was not obliged to disclose in detail the facts relative to his investigation and conclusion, nor was the District Court obliged to require proof of facts showing reasonable grounds to believe that the tax returns of E. F. Prichard, Sr., and others were false or fraudulent.". This decision was followed in In re Wood, D.C.W.D.Ky., 123 F.Supp. 297; Id., D.C., 130 F.Supp. 121.

Several cases have held investigations not to be "unnecessary," although it does not appear that facts were alleged which indicated probable cause for the investigation. Norda Essential Oil and Chemical Co. v. United States, 2 Cir., 230 F.2d 764, certiorari denied 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484; Globe Construction Co. v. Humphrey, 5 Cir., 229 F.2d 148; Falsone v. United States, 5 Cir., 205 F.2d 734, certiorari denied 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375; United States v. United Distillers Products Corp., 2 Cir., 156 F.2d 872. In Matter of Levine, 2 Cir., 243 F.2d 175, affirming an opinion below, D.C., 149 F.Supp. 642, 643, we adopted Judge Kaufman's statement that the Code "requires no showing by petition or affidavit that there is cause for believing taxes have not been properly paid where the examination is of the taxpayer himself as is the case here. The very purpose of the examination is to discover whether tax liability exists, and the provision was put into the law to enable the Treasury Department to perform its statutory duty of ensuring that taxes are being properly paid * *. The question of probable cause for such investigations comes into play when a third party is requested to produce records relating to the taxpayer under investigation." The opinion goes on to say that the petitioner has pointed out no procedural defect, "Nor does he in-

voke any question of the Statute of Limitations. Thus he has presented no reason for denying the Treasury Department its statutory right to examine him to see if taxes have been properly paid."

In analogous situations the Supreme Court has held that the Administrator need not establish coverage prior to investigating possible liability. Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424. Although those cases arose in different contexts, we think them applicable here. The taxpayer may not compel the Internal Revenue Service to defer its investigation until it has litigated the residence issue. It is not unlikely that a victory for the Service in such a contest might turn out to be an empty one, due to the running of the statute of limitations or the disappearance of leads to the extent of liability. The taxpayer is not entitled to sidetrack the investigation while the trail grows cold. The stricture against "unnecessary" examinations was designed to prevent uselessly repetitive procedures and investigations not relevant to possible tax liability, not to nullify the preceding sections of the Code.

We are not now called upon to resolve the apparent conflict between the cases dealing with what the tax authorities must show to warrant examination of the taxpayer and others relative to matters which may be barred by the statute of limitations. But we do hold that in such situations as the one before us now the Internal Revenue Service need not introduce evidence on the residence issue as a prerequisite to investigation. Were we to hold otherwise we would permit the taxpayer to control the course of the investigation and deprive the Government of the legitimate and wholly desirable advantage, which may well prove decisive in particular cases, of pursuing *pari passu* the issues relating to earnings and income on the one hand and to residence abroad on the other. No one can tell until after the event, and the examination of the taxpayer has been concluded, what may or may not be the interrelation between these seemingly separate and distinct matters. Indeed, although the kind of legal work which petitioner did during these years, for whom, how much and on what basis he was paid, how he was paid and when, may all seem to bear largely on the amount of his income, it cannot be said that such information regarding the activities of a professional man are irrelevant to the question of his residence.

Affirmed.