313 F.2d 79
 Perry A. De MASTERS, Internal Revenue Agent, Internal Revenue Service, Arthur G. Erickson, District Director of Internal Revenue, Mortimer M. Caplin, Commissioner of Internal Revenue and The United States National Bank of Portland (Oregon), Appellants,
v.
Egon D. AREND and Mela K. Arend, Appellees.
 No. 17796.
 United States Court of Appeals Ninth Circuit.
 January 24, 1963.
 Rehearing Denied February 26, 1963.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Howard, Norman Sepenuk and Burton Berkley, Attys., Dept. of Justice, Washington, D. C., and Sidney I. Lezak, Acting U. S. Atty., Portland, Or., for appellants.
 Morris J. Galen, Portland, Or., for appellees.
 Before MERRILL, BROWNING and DUNIWAY, Circuit Judges.
 BROWNING, Circuit Judge.
 
 
 1
 The District Court permanently enjoined appellants (employees of the Internal Revenue Service) from investigating possible income tax liability of appellee taxpayers for years as to which recovery would be barred by the statute of limitations in the absence of fraud. The Court also permanently enjoined the United States National Bank of Portland from disclosing to appellants any information regarding transactions by or with the taxpayers during such years. We reject appellants' contention that a District Court has no power to issue such a restraining order in any circumstances, but we conclude that the Court lacked power to do so in the circumstances of this case.
 
 
 2
 The taxpayers'[1] 1946 and 1948 income tax returns were audited and their records for those years examined during 1948 and 1950. In 1957 appellant De Masters, an Internal Revenue agent, began a new investigation of the taxpayers' returns. It is stipulated that the period during which additional income tax could be assessed against taxpayers for any year prior to 1955 had expired, unless fraud were involved.[2] The taxpayers furnished De Masters with the information which he requested until he sought access to taxpayers' records without limitation as to date. Appellees' counsel then advised De Masters that in view of the prior audits and because the taxpayers were not charged with fraud they would not cooperate further in the investigation.
 
 
 3
 De Masters prepared tentative computations from various sources which indicated that the increase in the taxpayers' net worth, plus their estimated living expenses, during the period 1940 through 1956 totaled approximately $170,000. This increase, after appropriate adjustments, exceeded the income which the taxpayers reported during the same period for tax purposes by more than $90,000. He then examined records of a branch of the First National Bank of Portland reflecting deposits during 1948 to the account of taxpayers' shoe store, and found that they totaled some $17,000 more than the gross receipts reported on taxpayers' income tax return for that year.
 
 
 4
 De Masters concluded that further investigation was justified, and caused a summons to issue directing the United States National Bank of Portland to produce records pertaining to the taxpayers' transactions with the bank during the years 1940 to 1957. The taxpayers were advised that the bank would comply with the summons. They then filed the present suit for an injunction, naming the bank, the Commissioner of Internal Revenue, the District Director, and De Masters as defendants.
 
 
 5
 The District Court held a hearing at which De Masters testified as to his computations and the results of his analysis of the taxpayers' 1948 deposits with the First National Bank of Portland. The Court concluded that the appellants had "failed to establish by competent evidence that there exists any reasonable grounds or other probable cause to find or suspect that any fraud existed with respect to any of the returns filed by the plaintiffs for the years that are now closed by the statute of limitations," and that the taxpayers were therefore entitled to an injunction. The Court permanently enjoined the appellants from examining the taxpayers or their records, or any third party as to transactions with the taxpayers, with respect to any year prior to 1955; and permanently enjoined the United States National Bank of Portland from disclosing any information as to transactions with the taxpayers prior to that year.
 
 
 6
 Appellants contend that (1) the District Court lacked jurisdiction of the action, (2) the suit was one against the United States to which consent had not been given and was therefore barred by the doctrine of sovereign immunity, and (3) the District Court's decision on the merits was erroneous.
 
 
 7
 * The taxpayers assert that their suit falls in the category of actions "arising under any Act of Congress providing for internal revenue" over which district courts are granted original jurisdiction by Section 1340 of the Judicial Code.[3] Concededly, appellants purported to act under the authority of Section 7602 of the Internal Revenue Code[4] in issuing the summons to the bank. The taxpayers challenged appellants' authority under that section on the ground that the inquiry was prohibited by Section 7605(b) of the Internal Revenue Code[5] as well as by the Fourth Amendment. Since the taxpayers' suit involved a substantial controversy as to the construction and effect of these sections of the Code, we agree with the District Court that if otherwise maintainable the action fell within the jurisdictional grant of Section 1340.[6]
 
 II
 
 8
 Section 1340 is not a consent by the United States to suits against it.[7] However, if appellants were indeed prohibited by Section 7605(b) or the Fourth Amendment from initiating this inquiry, a suit to restrain their unlawful conduct would not be barred by the doctrine of sovereign immunity.[8]
 
 A. The Fourth Amendment
 
 9
 Appellants' conduct did not violate the Fourth Amendment. They did not seek to compel production of the taxpayers' books and records, and if they had the Fourth Amendment would offer no basis for resisting that demand.[9] Assuming that an administrative subpoena directed to a corporation may constitute an "unreasonable search and seizure,"[10] the right violated would be that of the bank whose papers were demanded; but the bank waived any right it might have had to resist production, and the taxpayers could not in any event assert the right on the bank's behalf.[11]
 
 B. Section 7605(b)
 
 10
 Section 7605(b) contains two distinct prohibitions. The first is that "no taxpayer shall be subjected to unnecessary examination or investigations"; the second that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." 1. Appellants neither violated the second prohibition nor, at the time of suit, threatened to do so.
 
 
 11
 This prohibition applies by its express terms only to the taxpayers' records; it did not prevent the appellants from seeking information from other sources, such as the bank, regarding the taxpayers' possible liability.[12] Indeed, the section anticipates that such inquiries will be made; as we read it, the section intends that the Commissioner of Internal Revenue (the Secretary's delegate) shall notify the taxpayer of an additional inspection of the taxpayer's books only "after investigation" from which the Commissioner concludes that "an additional inspection is necessary," and the preliminary investigation referred to must necessarily be an inquiry of sources other than the taxpayer.
 
 
 12
 There is nothing to indicate that appellants intended to seek a second inspection of the taxpayers' records for the years 1946 and 1948 unless, and until, the investigation of other sources required by Section 7605(b) had been completed, and had disclosed that an additional inspection of taxpayers' records was necessary. De Masters testified that the reason the taxpayers had not been notified of a second examination of their own records was that he had not completed the preliminary investigation required to sustain the notice. The threat that appellants would attempt a second examination of taxpayers' records without first satisfying the prerequisites of Section 7605(b) was at best remote and speculative.[13]
 
 
 13
 2. We turn finally to the provision of Section 7605(b) that "[n]o taxpayer shall be subjected to unnecessary examinations or investigations."
 
 
 14
 The command is unequivocal. We have held that it constitutes "a limitation on the power" of the tax collecting authorities; appellants, in consequence, had "no power to make an unnecessary examination or investigation."[14] As we have said, if appellants violated this statutory limitation upon their power, the present suit is maintainable.[15] The difficult problem, of course, is that of determining the scope of the limitation: what is meant by an "unnecessary" investigation?
 
 
 15
 The Commissioner's statutory duty and power to inquire are stated in broad terms. He is directed to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax."[16] He is authorized to examine records and data and to require persons liable for tax and others to appear, give testimony, and produce records and data, relevant or material to an inquiry "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax * * * or collecting any such liability."[17]
 
 
 16
 These grants of power are to be liberally construed in recognition of the vital public purposes which they serve;[18] the exception stated in Section 7605(b) is not to be read so broadly as to defeat them.[19] A limited construction of Section 7605(b) is also supported by the law's general antipathy to the erection of barriers to the ascertainment of truth,[20] and the policy against judicial intervention in the investigative stage of tax matters because of the danger of undue delay in the collection of the revenues.[21]
 
 
 17
 An investigation cannot be said to be "unnecessary" if it may contribute to the accomplishment of any of the purposes for which the Commissioner is authorized by statute to make inquiry. Since these include making a return where none has been made and ascertaining the correctness of any that have, the taxpayer[22] will rarely be able to discharge his burden of showing that the first investigation of a particular tax year is unnecessary. The legislative history, though sparse, tends to confirm the impression that Congress was primarily concerned with protecting taxpayers from examinations which were "unnecessary" in the sense that they followed prior investigations of the same matter which had established that there was no basis for liability.[23] As the Court of Appeals for the Second Circuit has said, "The stricture against `unnecessary' examinations was designed to prevent uselessly repetitive procedures and investigations not relevant to possible tax liability, not to nullify the preceding sections of the Code."[24]
 
 
 18
 The investigative power granted administrative agencies is inquisitorial in nature; its exercise does not depend upon a showing of probable cause to believe that a violation of law has occurred.[25] This is true of the power of inquiry vested in the Commissioner.[26] Clearly, he may as a general rule check to determine whether a return should have been filed where one was not, or whether more tax was due than was actually paid, without first showing that there was probable cause, or any cause at all, to believe that these things were true. The Bureau of Internal Revenue, like other administrative agencies charged with enforcement of law, "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."[27]
 
 
 19
 But the taxpayers assert that Section 7605(b) creates an exception to this rule where the Commissioner seeks to investigate a return for a tax year as to which, unless fraud is shown, the statute of limitations has barred additional assessment.[28] It is not apparent why this. should be so.
 
 
 20
 The Commissioner's power and duty to investigate for the purpose of "determining the liability of any person for any internal revenue tax"[29] surely includes liability which may be assessed on a finding of fraud. And even if no fraud exists, the investigation of barred years may be useful or even essential to establish a sound starting point for checking the accuracy of returns filed in years that remain open.[30] If a preliminary showing of probable cause is not necessary before initiating investigations for other authorized purposes, how can it be required for these?
 
 
 21
 The taxpayers suggest two reasons: a policy against the presumption of fraud; and a policy in favor of preserving the integrity of the statute of limitations. But it is not necessary to presume fraud to justify an investigation to determine whether it exists. The Commissioner's power to investigate particular returns for normal errors or omissions is not based upon a presumption that they will be found. And while the policy in favor of composing strife, reflected in the statute of limitations, is entitled to protection, so too is the Congressional policy that fraud affecting the revenue shall be exposed and penalized without regard to the elapse of time, especially in a tax system so largely based on self-assessment.
 
 
 22
 We think the limitations imposed upon the Commissioner by the interdiction of "unnecessary" investigations are essentially the same as those which may preclude judicial enforcement of administrative subpoenas: "that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be `limited * * * by forecasts of the probable result of the investigation.'"[31] These limitations are appropriate "to secure the public interest and at the same time to guard the private ones affected against the only abuses from which protection rightfully may be claimed. * * * They are rather the interests of men to be free from officious intermeddling, whether because irrelevant to any lawful purpose or because unauthorized by law, concerning matters which on proper occasion and within lawfully conferred authority of broad limits are subject to public examination in the public interest. Officious examinations can be expensive * * * time consuming * * * [and] * * * persecution when carried beyond reason"; but to bar investigation by the Commissioner because evidence of unlawful conduct is not yet available "would stop much if not all of investigation in the public interest at the threshold of inquiry and * * * render substantially impossible his effective discharge of the duties of investigation and enforcement which Congress has placed upon him."[32]
 
 
 23
 Of course, proof that the period for assessment absent fraud has expired is relevant to the question of whether an investigation is "unnecessary," just as it would be relevant to whether a court should enforce an administrative subpoena.
 
 
 24
 The purposes for which the Commissioner is authorized to investigate would then be limited. If he asserted no purpose other than one which was then barred of accomplishment (or asserted a purpose not authorized by the statute),[33] the proposed investigation would be "unnecessary" under Section 7605(b) and might be enjoined, just as an administrative subpoena issued by the Commissioner in such circumstances would be denied judicial enforcement as "in excess of his statutory authority."
 
 
 25
 Even though the Commissioner asserted a purpose to investigate for fraud, or to confirm a deficiency in an open year, as he was authorized to do, the likelihood that the inquiry might be "unnecessary" or the issuance of a subpoena "arbitrary," would at least be enhanced by the relative infrequency with which either fraud, or the need for indirect verification of a deficiency, normally occurs. And if it appeared that the decision to investigate in aid of that purpose was in fact reached as a matter of rational judgment based on the circumstances of the particular case, then the investigation would not be an "unnecessary" one prohibited by Section 7605(b), just as the act of issuing an administrative subpoena in such circumstances would not be "arbitrary" and the subpoena unenforceable.
 
 
 26
 This limited extension of the area of proper judicial intervention in the process of administrative investigation is justified by a significant change in the relevant balance of public and private interests which takes place with the running of the statute of limitations. The government's need for speedy and unimpeded access to the facts is diminished when the problem shifts from that of checking the accuracy of the returns of sixty million taxpayers within the relatively short period of limitations, to that of ferreting out the rare instance of liability for fraud which can never be barred by the passage of time. From the taxpayer's point of view, an inquiry which can be readily met when memories are clear and records readily available, may become difficult to satisfy with a lapse of time, possibly extending, as in this case, to a score or more of years.
 
 
 27
 The showing by the taxpayers in the present case that further assessment was time-barred in the absence of fraud may have been sufficient to require the appellants to go forward with a justification of their inquiry. But this they did, and the showing which they made was sufficient to establish (1) that further investigation was undertaken pursuant to the Commissioner's authority, and (2) that the decision to proceed was not arbitrary. No more was required.
 
 
 28
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 The taxpayers are husband and wife
 
 
 [2]
 If a false or fraudulent return with intent to evade the tax, or a willful attempt in any manner to defeat or evade tax, is involved, the tax may be assessed at any time. 26 U.S.C.A. § 6501(c) (1) and (2)
 
 
 [3]
 "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue." 28 U.S.C.A. § 1340
 
 
 [4]
 "For the purpose of * * * determining the liability of any person for any internal revenue tax * * * the Secretary or his delegate is authorized —
 * * * * *
 "(2) To summon * * * any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax * * * to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data * * * as may be relevant or material to such inquiry * * *." Int.Rev.Code of 1954, § 7602, 26 U.S.C.A. § 7602.
 
 
 [5]
 "No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." Int.Rev.Code of 1954, § 7605(b), 26 U.S.C.A. § 7605 (b)
 
 
 [6]
 See United States v. Coson, 286 F.2d 453, 456 (9th Cir., 1961)
 
 
 [7]
 United States v. Coson, 286 F.2d 453, 456 (9th Cir., 1961); First Nat'l Bank of Emlenton, Pa. v. United States, 265 F.2d 297, 299 (3d Cir., 1959). Compare Application of Colton, 291 F.2d 487, 489-490 (2d Cir., 1961), 75 Harv.L.Rev. 1222 (1962)
 
 
 [8]
 Malone v. Bowdoin, 369 U.S. 643, 647-648, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Larson v. Domestic & Foreign Corp., 337 U.S. 682, 689-690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), and cases cited; California v. Rank, 293 F.2d 340, 349-353 (9th Cir., 1961), cert. granted 370 U.S. 936, 82 S.Ct. 1586, 8 L.Ed.2d 806 (1962). See Harmon v. Brucker, 355 U.S. 579, 581-582, 78 S.Ct. 433, 2 L.Ed.2d 562 (1958); Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Colorado v. Toll, 268 U.S. 228, 230, 45 S.Ct. 505, 69 L.Ed. 927 (1925). See also Leedom v. Kyne, 358 U.S. 184, 190, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Application of Colton, 291 F.2d 487, 489-490 (2d Cir., 1961), and cases cited, 75 Harv.L.Rev. 1222 (1962). See generally 75 Harv.L. Rev. 1479-93 (1962). We are also satisfied that this taxpayers' suit is neither one for declaratory judgment "with respect to federal taxes" precluded by 28 U.S.C.A. § 2201; nor an action "for the purpose of restraining the assessment or collection of any tax" precluded by 26 U.S.C.A. § 7421(a)
 
 
 [9]
 See National Plate & Window Glass Co. v. United States, 254 F.2d 92 (2d Cir., 1958); Bolich v. Rubel, 67 F.2d 894 (2d Cir., 1933)
 
 
 [10]
 Some doubt is suggested by Oklahoma Press Publishing Co. v. Walling, 327 U. S. 186, 195, 66 S.Ct. 494, 90 L.Ed. 614 (1946), and First Nat'l Bank of Mobile, Ala. v. United States, 295 F. 142 (S.D. Ala.1924), aff'd 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925). See also 69 Yale L.J. 131, 132-33 (1959)
 
 
 [11]
 Foster v. United States, 265 F.2d 183, 187-188 (2d Cir., 1959), and cases cited. The taxpayers rely upon Zimmermann v. Wilson, 81 F.2d 847 (3d Cir., 1936), but the Court of Appeals for the Third Circuit modified its decision upon this point in a later opinion in the same case reported at 105 F.2d 583, 586 (1939), stating, "[o]ur present view that a third party is not entitled to invoke the protection of the Fourth Amendment brings our decision in line with the overwhelming weight of authority." See 43 Va.L. Rev. 114 (1957). See also Baskerville v. United States, 227 F.2d 454, 456 (10th Cir., 1955); United States v. Eversole, 209 F.2d 766, 768 (7th Cir., 1954). See also United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), and cases cited; Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Fourth Amendment rights do not depend upon nice distinctions of property law (cf. Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), and cases cited), but the taxpayers had no interest in the bank's records of the kind the Fourth Amendment was intended to protect. Their interest was no different nor greater than that which they would have in denying appellants access to documentary evidence belonging to, in the possession of, and to be produced by, any third person, which might contain information damaging to the taxpayers. Cf. Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)
 
 
 [12]
 Application of Magnus, 299 F.2d 335 (2d Cir., 1962); Foster v. United States, 265 F.2d 183, 188 n. 3 (2d Cir., 1959); Hubner v. Tucker, 245 F.2d 35, 39 (9th Cir., 1957)
 
 
 [13]
 See Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.C. 641, 92 L.Ed. 784 (1948)
 
 
 [14]
 Martin v. Chandis Securities Co., 128 F.2d 731, 735-736 (9th Cir., 1942). We have been invited to re-examine Chandis in the light of Application of Magnus, 299 F.2d 335, 337 (1962), in which the Court of Appeals for the Second Circuit recently held that the prohibition in Section 7605(b) against unnecessary investigations (as well as that against repeated inspections of taxpayer's books and records) applies only to inquiries made of the taxpayer personally, and does not extend to inquiries made of third persons even though concededly part of an investigation directed solely to the taxpayer's liability. As the Court in Magnus points out, inquiries of third parties impose no burden upon the taxpayers, the third parties may have judicial protection from unwarranted and unreasonable search and seizure independently of Section 7605(b), and the government would not be barred from making inquiries which might throw light on the taxpayer's liability and enable the government to demonstrate that a direct examination of the taxpayer and his records is necessary. See also Foster v. United States, 265 F.2d 183, 188 n. 3 (2d Cir., 1959). But see Colton v. United States, 306 F. 2d 633, 635-636 (2d Cir., 1962), petition for cert. denied 83 S.Ct. 505 (1962). However, the disposition which we make of the present case renders a re-examination of Chandis unnecessary
 
 
 [15]
 See note 8, supra
 
 
 [16]
 Int.Rev.Code of 1954, § 7601, 26 U.S. C.A. § 7601
 
 
 [17]
 Int.Rev.Code of 1954, § 7602, 26 U.S. C.A. § 7602
 
 
 [18]
 Falsone v. United States, 205 F.2d 734, 742 (5th Cir., 1953)
 
 
 [19]
 Application of United States, 246 F.2d 762, 765 (2d Cir., 1957)
 
 
 [20]
 Application of Magnus, 299 F.2d 335, 337 (2d Cir., 1962); McMann v. SEC, 87 F.2d 377, 109 A.L.R. 1445 (2d Cir., 1937)
 
 
 [21]
 See Enochs v. Williams Packing Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed. 2d 292 (1962); N.Y.U. 18th Annual Institute on Federal Taxation 958 (1960)
 
 
 [22]
 Perhaps a third person might show that an investigation was unnecessary as to him because he had no material relating to the taxpayer's liability, but here the issue is more likely to arise in resisting enforcement of a summons and the ground for relief more likely to be stated in terms of the burdensomeness of the demand. See United States ex rel. Sathre v. Third Northwestern Nat'l Bank, 102 F.Supp. 879 (D.Minn.1952); Foster v. United States, 265 F.2d 183, 187 n. 2 (2d Cir., 1959); 60 Mich.L.Rev. 187, 204-05 (1961)
 
 
 [23]
 It may also be drawn from the remarks of sponsors of the provision that Congress anticipated that its purpose of ending such "frivolous" investigations would be accomplished primarily through administrative control resulting from the requirement that the Secretary notify the taxpayer in writing of the necessity for repeating the inquiry — although it should be added that there is nothing to indicate an intention to exclude judicial intervention if administrative control should fail. What is now Section 7605 (b) of Title 26 first appeared as Section 1308 of the Revenue Bill of 1921. In presenting the proposal to the House, Congressman Hawley, in charge of the measure, stated (61 Cong.Rec. 5202 (1921)):
 "We had instances before us where the books of a corporation or an individual had been examined four or five times, with four or five different assessments of taxation. There ought to be one levy of tax, one determination of it. It ought to be settled once for all when a man pays his tax, unless there should be good cause for a re-examination.
 * * * * *
 "Of course the Commissioner would not cause a frivolous examination to be made or an examination to be made on a frivolous ground."
 Similarly, Senator Penrose, in charge of the measure, advised the Senate (61 Cong.Rec. 5855 (1921)):
 "[B]itter complaints have reached me and have reached the department of unnecessary visits and inquisitions after a thorough examination is supposed to have been had. This section is purely in the interest of quieting all this trouble and in the interest of the peace of mind of the honest taxpayer."
 In the same passage, Senator Penrose agreed with the statement of Senator Walsh that the purpose of the Section as "to limit the inspection to one visit unless the Commissioner indicates that there is necessity for further examination."
 The report of the Senate Committee (S.Rep. No. 275, 67th Cong., 1st Sess. 31 (1921)) states that the provision "is designed to meet the complaint of taxpayers that they are subjected to onerous and unnecessarily frequent examinations and investigations by revenue agents." H.R.Rep. No. 337, 67th Cong., 1st Sess. 16 (1921), is to the same effect.
 
 
 [24]
 Application of the United States, 246 F.2d 762, 765 (1957); 60 Mich.L.Rev. 187, 204-05 (1961)
 
 
 [25]
 United States v. Morton Salt Co., 338 U.S. 632, 642-643, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 214-216, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943); Hagen v. Porter, 156 F.2d 362, 365 (9th Cir., 1946); 69 Yale L.J. 131, 133 (1959); 1 Davis, Administrative Law, § 3.12 (1958)
 
 
 [26]
 Foster v. United States, 265 F.2d 183, 186 (2d Cir., 1959), and cases cited
 
 
 [27]
 United States v. Morton Salt Co., 338 U.S. 632, 642-643, 70 S.Ct. 357, 94 L.Ed. 401 (1950)
 
 
 [28]
 The decisions of the Courts of Appeals establish no clear rule as to whether an additional showing is required of the government in these circumstances to obtain enforcement of a subpoena issued under Section 7602, and, if so, what that showing must beFirst: The Court of Appeals for the First Circuit has most nearly approached a requirement that "probable cause" in the Fourth Amendment sense be shown (O'Connor v. O'Connell, 253 F.2d 365, 369-370 (1958); Lash v. Nighosian, 273 F.2d 185, 188-189 (1959)), and in so doing expressly disagrees with holdings of Courts of Appeals for the Second and Fifth Circuits (253 F.2d at 370). However, the Court views the issue as one of fact as to which the Commissioner's determination is binding if supported "by witnesses whose testimony, although contradicted, was not so incredible as to be beyond reasonable belief" (273 F.2d at 189). Second: The Court of Appeals for the Second Circuit appeared to adopt the rule that no showing need be made as to possible fraud: "Nor should [the Bureau] be required to prove the grounds of its belief prior to examination of the only records which provide the ultimate proof" (United States v. United Distillers Prods. Corp., 156 F.2d 872, 874 (1946)); "The Commissioner is therefore entitled to the examination if it may shed light on whether a liability still exists or whether it has been time-barred * * * the Commissioner * * * should not be required to prove grounds for belief that the liability was not time-barred" (Foster v. United States, 265 F.2d 183, 187 (1959)). But the Court nonetheless treated the question as still open in Application of United States, 246 F.2d 762, 765 (1957), and again in Application of Magnus, 299 F.2d 335, 337 (1962). Fourth: The Court of Appeals for the Fourth Circuit noted the difference in view among the Courts of Appeals and found it unnecessary to resolve it, but took it to be admitted that "a bona fide suspicion of fraud justifies the investigation of the appropriate records." Wall v. Mitchell, 287 F.2d 31 (1961). Fifth: The Court of Appeals for the Fifth Circuit is usually cited as requiring no showing of facts justifying a suspicion of fraud on the basis of its cryptic opinion in Globe Constr. Co. v. Humphrey, 229 F. 2d 148 (1956). See, e. g., O'Connor v. O'Connell, supra, 253 F.2d at 370. Sixth: The Sixth Circuit has held that an agent's testimony that he had concluded from his investigation that there was a strong suspicion of fraud was sufficient, and that "[t]he special agent was not obliged to disclose in detail the facts relative to his investigation and conclusion, nor was the District Court obliged to require proof of facts showing reasonable grounds to believe that the tax returns * * * were false or fraudulent." Peoples Deposit Bank & Trust Co. v. United States, 212 F.2d 86, 87 (1954). In Corbin Deposit Bank v. United States, 244 F.2d 177 (1957), the Court said, "[p]robable cause * * * was established by the testimony of an internal revenue agent who enumerated facts showing reasonable grounds for a suspicion of fraud," and the District Court properly excluded "evidence for the purpose of proving that the taxpayers in fact had filed honest returns." Finally, in Eberhart v. Broadrock Dev. Corp., 296 F.2d 685, 687 (1961), the Court stated, "there was at least an inference that fraud extended into some of the previous years. In our judgment, this was sufficient to authorize the examinations." Ninth: The Court of Appeals for the Ninth Circuit in Martin v. Chandis Securities Co., 128 F.2d 731, 735 (1942), acted upon an agreement of the parties that a showing was required "of probable cause, sometimes called reasonable ground for suspicion of fraud", but "without expressing any opinion as to the soundness thereof." In Boren v. Tucker, 239 F.2d 767 (1956), we found the test assumed in Chandis to be satisfied by proof of a "possibility" of fraud, and expressed approval of Globe, supra, 229 F.2d 148 (5th Cir.), and Peoples Deposit, supra, 212 F.2d 86 (6th Cir.), both of which, as noted above, require no showing as to the likelihood of fraud. 239 F.2d at 769-70, 773.
 
 
 [29]
 Int.Rev.Code of 1954, § 7602, 26 U.S. C.A. § 7602
 
 
 [30]
 Falsone v. United States, 205 F.2d 734, 743 (5th Cir., 1953); Norda Essential Oil & Chem. Co. v. United States, 230 F.2d 764, 765 (2d Cir., 1956). Appellants do not appear to rely upon this basis for now examining the barred years in the present case, apparently satisfied that the returns filed in the open years were accurate; they do argue, however, that the injunction should at least be modified so as not to preclude such an examination if evidence of deficiencies in the open years were later obtained
 
 
 [31]
 Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614 (1946)
 This does not mean that Section 7605 (b) adds nothing to the taxpayers' protection. Section 7605(b) permits a judicial testing of the basic legality of the administrative action at an earlier stage than might otherwise be possible, and it provides a novel check on repetitious investigations which, as we have seen (note 23), was apparently its principal purpose.
 We are not here concerned with limitations based upon the breadth of the inquiry or the relevance to the inquiry of the material sought. 1 Davis, Administrative Law § 3.05 (1958).
 
 
 [32]
 327 U.S. at 213, 66 S.Ct. at 508, 90 L.Ed. 614
 
 
 [33]
 See Pacific Mills v. Kenefick, 99 F.2d 188 (1st Cir., 1938)