518 F.2d 842
 75-2 USTC P 16,193
 UNITED STATES of America and Arthur A. Ronat, Special Agent
of the Internal Revenue Service, Petitioners-Appellants,
v.
James B. KENDRICK, as a Corporate Officer of Kendrick
Cartage Co. and United Construction Co., et al.,
Respondents-Appellees.
 No. 74-2053.
 United States Court of Appeals,
Seventh Circuit.
 July 10, 1975.
Rehearing Denied Aug. 20, 1975.
 
 Scott P. Crampton, Asst. Atty. Gen., Myron C. Baum, Atty., Tax Div., Dept. of Justice, Washington, D. C., Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., for petitioners-appellants.
 Edward G. Maag, Belleville, Ill., for respondents-appellees.
 Before TUTTLE,* CUMMINGS and STEVENS, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 This is an appeal by the United States and a special agent of the Internal Revenue Service from an order of the district court refusing to enforce summonses issued by the Internal Revenue Service for corporate records of Kendrick Cartage Company and United Construction Company for several of the years between 1965 and 1971. The Government requested that a summons be enforced as to all seven years with respect to both corporations. The trial court granted the Government's petition as to Kendrick for 1965, as to both corporations for 1966, 1967 and 1968 and denied the application as to both corporations for 1969, 1970 and 1971.
 
 
 2
 The summonses involved in this case were issued under the authority of § 7602 of the Internal Revenue Code of 1954, which provides that:"For the purpose of . . . determining the liability of any person for any internal revenue tax . . . the Secretary or his delegate is authorized . . . (t)o summon the person liable for tax . . . or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry . . ."
 
 
 3
 The parties stipulated that the books and records demanded in these summonses are relevant and material to an investigation of the Civil Excise Tax liability of Kendrick and United for the years, 1965 through 1971. The district court further found as a fact that:
 
 
 4
 "(4) The records and documents requested in the subject summonses are necessary to determine whether or not there was excise tax liability for the corporations, United Construction Company and Kendrick Cartage Company, in the years, 1965 through 1971."
 
 
 5
 The taxpayers conceded in the district court that the summons should be enforced with respect to the records of Kendrick for the taxable years, 1965, 1966, 1967 and 1968 and as to United for the years, 1966, 1967 and 1968. The district court granted enforcement as to these years. However, the taxpayers objected to the enforcement of the summonses as to the remaining years for the respective corporations because they claimed that such enforcement was barred by the provisions of § 7605(b) of the Internal Revenue Code of 1954. This section provides as follows:
 
 
 6
 "Restrictions on examination of taxpayer
 
 
 7
 No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary . . ."
 
 
 8
 As already stated, the controversy that now remains relates to the year 1965 as to United and the years 1969, 1970 and 1971 as to both corporations. For the purpose of clarity, we deal with these years separately as between 1965 and the grouping of the three later years as did the trial court.
 
 1965 UNITED CONSTRUCTION COMPANY
 
 9
 It is undisputed that a complete income tax audit was made of Kendrick Cartage Company for inspection of the records of the taxpayer was made for the purpose of determining wher inspection of the records of the taxpayer was made for the purpose of determining whether excise tax on fuel was due and unpaid. The issue here is posed by the Government's contention that the Commissioner is not prohibited from making an inspection of the books of a taxpayer without the inspection notice provided for in § 7605(b) where he seeks to make an excise tax investigation, "merely because the same taxpayer has been the subject of a completed income tax audit" (emphasis added) for the year in question.
 
 
 10
 No court has decided the issue so raised. Both the taxpayers and the Government cite the case of United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) to support their respective positions. The Powell case did not deal with the issue now before us. The question there was whether the Commissioner, in order to be entitled to the enforcement of a summons following the statutory notice that "an additional inspection is necessary" was required to have the Commissioner's notice supported by an allegation of specific evidence of fraud where the statute of limitations would have barred the reopening of a particular tax year unless fraud was proved. Appearing to support the Government's contention that § 7605(b) is not to be construed in a manner unduly to hamper the investigation otherwise authorized by the Internal Revenue Code, we find the language:
 
 
 11
 "Although a more stringent interpretation is possible, one which would require some showing of cause for suspecting fraud, we reject such an interpretation because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted, forcing him to litigate and prosecute appeals on the very subject which he desires to investigate, and because the legislative history of § 7605(b) indicates that no severe restriction was intended." (Emphasis added.)
 
 379 U.S. 48, 53-54, 85 S.Ct. 248, 253.[1]
 
 12
 We also find the language "for us to import a probable cause standard to be enforced by the courts would substantially overshoot the goal which the legislators sought to attain," 379 U.S. at 56, 85 S.Ct. at 254.
 
 
 13
 The Powell case and Ryan v. United States, 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed.2d 122, decided the same day by the Court, are the only cases cited by the taxpayers here in support of their argument that any examination of the books and records of these taxpayers after the completion in 1966 of an income tax audit for 1965 would have the effect of barring any further inspection of the books for the year 1965 to ascertain whether any excise taxes were due for that year.[2]
 
 
 14
 The taxpayers, in support of their contention, point to the following language:
 
 
 15
 "Congress recognized a need for a curb on the investigating powers of low- echelon revenue agents, and considered that it met this need simply and fully by requiring such agents to clear any repetitive examination with a superior."
 
 
 16
 379 U.S. 55-56, 85 S.Ct. at 254. Actually, it appears to us that this language somewhat supports the Government's position in that it equates the word "inspection" with the idea of "examination," which has the effect of providing a much broader scope to an ongoing examination of the books and records of a taxpayer.
 
 
 17
 We deal later with the problem raised by the effort of the Internal Revenue Service to pick up a discontinued examination of the books of account in order to determine whether a hiatus occurring during the course of an examination triggers the requirement of § 7605(b) that the statutory notice in writing be given to the taxpayer that an additional inspection is necessary. That is not the issue with respect to the 1965 problem. Here there is no doubt but that a completed income tax audit was made following an inspection of the books. The question is whether in order to make a different investigation dealing with the fuel excise tax this section requires that the Secretary make an investigation and notify the taxpayer in writing of the necessity for such an inspection.
 
 
 18
 While not mentioned in the Government's brief, it was called to the Court's attention at oral argument, that the fuel tax imposition cannot really be adjusted to the language of § 7605(b) which speaks of "only one inspection of a taxayer's books of account . . . for each taxable year." Unlike the income tax for which an audit was completed for the year 1965, the fuel excise tax is reportable quarterly and there is no such thing as a "taxable year" with respect to such tax for the obligation of the taxpayer to report and pay it. The tax is imposed by 26 U.S.C.A. § 4041 and is required to be reported and paid quarterly by Internal Revenue Regulations 48.6011A-1 of 26 C.F.R., 32 F.R. 5264, March 29, 1967.
 
 
 19
 In undertaking to construe the language of this section of the Internal Revenue Code, we believe, as did the Court of Appeals for the Fifth Circuit in United States v. Schwartz, 469 F.2d 977 (5th Cir. 1972) that it is plainly necessary for us to construe the word "inspection" in connection with the words "unnecessary examination or investigations." We are of the view that the prohibition against a second "inspection" without a statutory notice is to be read in pari materia with the opening clause of the section which clearly states the purpose for which it was enacted, that is, that "no taxpayer shall be subjected to unnecessary examination or investigations . . ." (Emphasis added.) In this case, the trial court expressly found in its numbered Findings of Fact that:
 
 
 20
 "The records and documents requested in the subject summonses are necessary to determine whether or not there was excise tax liability for the corporations, United Construction Company and Kendrick Cartage Company, in the years 1965 through 1971."
 
 
 21
 This would seem to satisfy the statutory prohibition against "unnecessary examination or investigations." In light of this Finding of Fact and in view of the inapplicability of the language of the section speaking of "each taxable year", which clearly has no application to a fuel excise tax report or payment, we conclude that this section of the Code does not require that the Secretary or his delegate, after investigation, give a statutory ten-day notice to the taxpayer that an additional inspection is necessary before being entitled to have the summonses issued in aid of his investigation of fuel excise taxes for the year 1965.[3]
 
 1969, 1970, 1971 BOTH CORPORATIONS
 
 22
 The factual background with respect to the years 1969, 1970 and 1971 is a little more complicated, because the taxpayers and the district court seem to have lumped all three years together without regard to the specific investigations for specific years that were undertaken by the Internal Revenue agents. The following facts are undisputed: during March, 1972 Revenue Agent Buescher began an investigation of the diesel fuel excise tax liability of Kendrick Cartage Company and United Construction Company for the year 1969. His examination was conducted at the offices of the law firm of Walker and Williams, counsel for Kendrick and United, apparently by consent of the taxpayers who made the books and records available. At the same time, Revenue Agent Harry Koenig was also at the law offices of Walker and Williams to conduct an examination of the income tax liability of Kendrick for the year 1970.
 
 
 23
 Without any indication of how it happens that the books and records of the two taxpayers for the years 1969, 1970 and 1971 were all present in the law offices, it is undisputed that they were "available" during the eight or ten days during the month of March of 1972 while agents Buescher and Koenig made their examination. During this time two auditors and an investigator from the Illinois Department of Revenue were examining the records of Kendrick and United at the offices of Walker and Williams. Agents Buescher and Koenig suspended their examinations of these records about March 30, at the request of counsel for the taxpayers in order that there be less confusion in the several examinations.
 
 
 24
 In September 1970, the taxpayers notified the Internal Revenue Service that the state agents had finished their work and Agents Buescher and Koenig returned to the offices of counsel, where the same books and records were again made available for them. Agent Koenig and Agent Johnson completed the income tax audit of Kendrick for the year 1970 by the end of November, and they issued their report shortly after the beginning of the following year. Agent Buescher did not recommence his inspection of the books, but listed certain records that were there made available. Subsequently, Special Agent Arthur Ronat was assigned the task of investigating the excise tax liability of the two taxpayers for the years 1965 through 1971, and on March 28, 1973 the summonses here at issue were issued. Agent Johnson testified that he had spent 114 hours during the months of September, October and November inspecting the books in the course of his income tax investigation for the year 1970. Agent Buescher testified that he had spent 46 hours on the books and records of United and 12 hours on the books of Kendrick during the month of March prior to the suspension of his investigation.
 
 
 25
 The record is silent as to any communications between the taxpayers or their lawyers and the Internal Revenue agents or special agent indicating that they considered the fuel tax inspection at an end. No further informal request was made by the Internal Revenue Service for permission to recommence the inspection. The summonses were sought on behalf of Special Agent Ronat who testified at the hearing on enforcement of the summons that he was investigating as to the existence of a civil tax liability. However, the Court takes judicial notice of the fact that special agents of the Internal Revenue Service are authorized subsequently, upon finding the existence of civil liability, to make an initial investigation as to possible criminal liability as well. Agent Buescher had testified that during his March inquiry he had been unable to find that any fuel tax returns or payments had been made.[4] The assignment of a special agent to pursue this investigation would seem to be economical in terms of manpower in the Internal Revenue Service if the agents considered that the inspection thus far made indicated a possibility of serious violations of the federal statutes.
 
 
 26
 The trial court lumped together the three years, 1969, 1970 and 1971 for both corporations and both assigned investigations and, in effect, determined that since one investigation for one year (1970) against one corporation (Kendrick) for one tax liability (income tax) was concededly completed, the special agent was barred from recommencing what without dispute was an incomplete inspection of the books and records for fuel tax liability not only for the year 1969 for the two corporations, for which purpose he had commenced the inspection, but for the years 1970 and 1971 as well. This result was reached by the trial court apparently on the ground that the books and records for 1969, 1970 and 1971 for both corporations were "made available" at the office of counsel for the taxpayers, although the record is silent as to any request or other reason why those not sought were made available.
 
 
 27
 From this state of facts, it is clear that even by the strictest interpretation of the statute urged by the taxpayers, there has been no first inspection completed as to either corporation for the year 1969 for either excise or income tax; there had been no completed inspection for either corporation for excise taxes for 1970 and none as to income taxes for United for 1970; furthermore, there has been no inspection of the books and records of either corporation for either income or excise taxes for the year 1971.
 
 
 28
 Furthermore, in light of our conclusion with respect to the request related to 1965, we conclude that the completed income tax audit for the year 1970 of the books and records of Kendrick does not bar a recommencing of the incompleted inspection of the books and records of that corporation, and certainly not of United, to aid in the investigation of the liability for fuel excise taxes.
 
 
 29
 Essential to our determination as to the right of the agents to have the summonses honored is the question: when is the first "inspection" completed, so as to trigger the need for the statutory notice that "an additional inspection is necessary?" This question is probably made somewhat more difficult because of the fact that, as in this case, the books and records of these two corporations were made available as a result of informal arrangements instead of following a summons issued by the Internal Revenue Service and enforced by court order. The record is silent as to the conversations and details of the arrangements under which the books and records were made available. It is undisputed that one set of records, the "terminal fuel records", were not available,[5] but with this exception it appears that books and records for all of the years from 1965 through 1971 were in the offices of counsel for the taxpayers either in boxes and crates or spread out, although, as indicated above, the only inspection sought to be made by these Internal Revenue agents were for the 1969 fuel excise tax for the two taxpayers and for the 1970 income tax for Kendrick. As stated, the record is silent as to any effort by the taxpayers to indicate that following the completion of the income tax audit by agents Koenig and Johnson in November, 1972 they considered the availability of the books and records at an end. This was the status of affairs when the summonses were issued in March of 1973.
 
 
 30
 We think the statute must be construed to equate the word "inspection" in § 7605(b) with the words "examination" and "investigations." As stated by the Court of Appeals for the Fifth Circuit in United States v. Schwartz,supra, p. 983,
 
 
 31
 "We do not believe that the use of the word 'inspection' in Section 7605(b), as contrasted with the words 'unnecessary examination or investigations' can be so restricted as to mean that there is an 'inspection' every time the agent or special agent looks at a book of account of a taxpayer. The word 'inspection' must, in all reason, have some relation to the activities of the agents in making the examination authorized under the statute. . . . Certainly the trial court could not have intended that while such examination was continuing it would be necessary for the Commissioner of Internal Revenue or his delegate to give a notice in writing under Section 7605(b) of each daily need to inspect any of the books or records of these companies."
 
 
 32
 The Schwartz court agreed with the interpretation of this section of the Internal Revenue Code as stated in United States v. Crespo, 281 F.Supp. 928, 933 (D.Md.1968). That court said:
 
 
 33
 "Similarly, the fact that a revenue agent has seen a cash book, journal or ledger once does not mean that he may not need to see it again for a different purpose."
 
 
 34
 The same test has been approved, although under somewhat different circumstances, in United States v. Giordano, 419 F.2d 564 (8th Cir. 1970) and National Plate & Window Glass Co. v. United States, 254 F.2d 92 (2d Cir. 1958).
 
 STATUTORY CONSTRUCTION
 
 35
 As the Supreme Court noted in the Powell case, supra, it is necessary to construe § 7605(b) in light of the other provisions of the Internal Revenue Code placing upon the Commissioner the duty to
 
 
 36
 "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax. . . ."
 
 
 37
 26 U.S.C.A. § 7601, and to examine records and data and to require persons liable for taxes and others to give testimony and produce records relevant thereto
 
 
 38
 "for the purpose of ascertaining the correctness of any return(s) . . . determining the liability of any person for any internal revenue tax . . . or collecting any such liability."
 
 
 39
 26 U.S.C.A. § 7602.
 
 
 40
 In its construction of 7605(b) the court said:
 
 
 41
 "The legislative history of § 7605(b) indicates that no severe restriction (upon the powers granted under 7602) was intended."
 
 
 42
 379 U.S. at 54, 85 S.Ct. at 253.
 
 
 43
 The Court of Appeals for the Ninth Circuit has said in DeMasters v. Arend, 313 F.2d 79 (9th Cir. 1968):
 
 
 44
 "These grants of power (Sections 7601 and 7602, supra ) are to be liberally construed in recognition of the vital public purposes which they serve (citing Falsone v. United States, 205 F.2d 734, 742 (5th Cir. 1953)); the exception stated in Section 7605(b) is not to be read so broadly as to defeat them (citing Application of United States, 246 F.2d 762, 765 (2nd Cir. 1957)). A limited construction of Section 7605(b) is also supported by the law's general antipathy to the erection of barriers to the ascertainment of truth (citing Application of Magnus, 299 F.2d 335, 337 (2nd Cir. 1962); McMann v. SEC, 87 F.2d 377 (2nd Cir. 1937)), and the policy against judicial intervention in the investigative stage of tax matters because of the danger of undue delay in the collection of the revenues (citing Enochs v. Williams Packing Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962))."
 
 
 45
 As an aid to the construction of the language of the statute we must consider the argument made by the taxpayers that the requirement that a notice of second inspection under their reading of 7605(b) is in no way a burdensome requirement. It is, of course, easy to say that where any inspection of books and records of a taxpayer has been had there is nothing wrong with having a requirement that before any further or additional look at the books can be had the Secretary or his delegate send a notice in writing to the taxpayer. The answer is that the Internal Revenue Service by its regulations treats the matter of a second inspection under § 7605(b) as something quite different from a perfunctory matter. As pointed out by the Government, the Commissioner has recognized his responsibility to reserve the use of a second inspection notice for rare and exceptional cases during the entire life of this Act. On January 20, 1923, the Commissioner directed that taxpayers should not be subjected to examinations or inquiries in connection with closed cases, and that reopening such cases should be the rare exception, not the rule. See 1975-8 CCH Stand.Fed.Tax Rep. P 5928.03. The current directions of the Commissioner are in accord with this policy.[6]
 
 
 46
 While, of course, the Commissioner's views as to his obligations under the statute do not bind the Court in construing its language, they are to be given much weight.
 
 
 47
 "The regulation(s) here in question represents an effort by the Commissioner to supply the definitions that Congress omitted. (footnote omitted) And it is fundamental, of course, that as 'contemporaneous constructions by those charged with administration of' the Code, the Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weight(ier) reasons.' Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501 (68 S.Ct. 695, 698, 92 L.Ed. 831). . . ."
 
 
 48
 Bingler v. Johnson, 394 U.S. 741, 749, 89 S.Ct. 1439, 1444, 22 L.Ed.2d 695.
 
 
 49
 It seems clear that the requirements of § 7605(b) in case there arises a need for a second inspection would not be met by the perfunctory writing of a letter by a district director. If the courts required compliance with this section every time there is some delay in completing an inspection of the books and records of a taxpayer for a particular year in order for the Internal Revenue agents to complete their inspection it would amount to a severe limitation of the Commissioner's authority under § 7602 to conduct a proper investigation. We conclude, therefore, that we must construe the statute without yielding to the temptation of saying that this is too simple a requirement to justify litigation by the Internal Revenue Service over the matter.
 
 
 50
 We conclude, therefore, that in the circumstances of this case the proposed inspection of the records of Kendrick for the year 1965 is not barred by the failure to comply with 7605(b), since the trial court has found that the records are "necessary" and because the statute speaks to inspections for one taxable year, a term which does not fit the inspection sought here for liability to make quarterly returns and payments of fuel excise taxes. We further conclude that such inspection as was being made of the records of the two taxed inspection within the contemplation of the statute and that the summonses should haved inspection within the contemplation of the statute and that the summonses should have been enforced as to this year for that purpose. For the same reason as is expressed with respect to the year 1965, we conclude that the fact that a completed audit was made with respect to the income tax liability of Kendrick for the year 1970 does not prevent a continued inspection of the books of that corporation for fuel excise tax liability for that year and, of course, does not prevent an inspection of the books of United for the same purpose. Finally, there has been no inspection of the books or records of either corporation for the year 1971 for any purpose. The books and records of both corporations are therefore open to inspection under the summonses as issued by the Internal Revenue Service for that year.
 
 
 51
 The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Elbert P. Tuttle, Circuit Judge, Fifth Circuit, sitting by designation
 
 
 [1]
 Interestingly enough, that part of the legislative history that is quoted in the Powell opinion, 379 U.S. 48, 53-54, 85 S.Ct. 248 would, if followed literally by the Court, limit "the inspection to one visit unless the Commission indicates that there is necessity for further examination."
 The language of the debate on the Senate floor that would bring about this result is in the question by Senator Walsh and a response by Senator Penrose, the manager of the bill on the Senate floor:
 "Mr. Walsh: And this provision of the Senate Committee seeks to limit the inspection to one visit unless the Commissioner indicates that there is necessity for further examination. (Emphasis added.)
 Mr. Penrose: That is the purpose of the amendment."
 However, so far as we have been able to determine, no taxpayer has ever seriously urged that "inspection" means just one look at the books of account, or that a second day's inspection during an examination is a second inspection. No court has so held, as discussed infra.
 
 
 [2]
 At the hearing in the district court it was proved that no excise tax returns had been filed
 
 
 [3]
 The trial court seemed impressed by the argument of the taxpayers that unless the statute were construed so as strictly to limit access to the books to a single inspection, the alternative would be to permit a reopening of the investigation for each of some 20 different kinds of taxes. We think that the statute does not call for an interpretation ng that the third, fourth, or fifth request of the Internal Revenue Service to inspect ng that the third, fourth, or fifth request of the Internal Revenue Service to inspect books and records would be "unnecessary" within the contemplation of the first clause of this section
 
 
 [4]
 Such testimony was not even an initial determination by him that any violation of the statute had occurred, because the obligation to pay taxes is dependent upon a number of factors and considerations that had not yet been fully explored
 
 
 [5]
 These records were among those subpoenaed by the summonses later issued
 
 
 [6]
 A statement of this policy from Rev.Proc. 72-40, 1972-2 Cum.Bull. 819, 820 follows:
 Sec. 4. Policy.
 .01 The Internal Revenue Service will not reopen any closed case after examination by a district office or Office of International Operations to make an adjustment unfavorable to the taxpayer unless:
 
 
 [1]
 There is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact; or
 
 
 [2]
 The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or
 
 
 [3]
 Other circumstances exist which indicate failure to reopen would be a serious administrative omission
 .02 All reopenings must be approved by the District Director or by the Director of International Operations for case (sic) under his jurisdiction. If an additional inspection of the taxpayer's books of account is necessary, the notice to the taxpayer required by section 7605(b) of the Code must be signed by the District Director, or by the Director of International Operations for cases under his jurisdiction.